FRED SHULT, Appellee, v. JOHN DOYLE et al., Appellants.

VENDOR AND PURCHASER: Construction and Operation of Con-
1   tract—Assumption and Agreement to Pay Mortgages—Dual Refor-
    mation. When the first vendee of land, who had contracted to "as-
    sume and pay" pre-existing mortgages on the land, immediately
    effected a resale to a second vendee, who simply contracted to take
    the land "subject to" said mortgages, and when the first vendee
    (in order to avoid liability) induced his vendor to execute directly
    to the second vendee a deed in which grantees "assumed and agreed
    to pay said mortgages," equity will, in an action at law on the
    notes and assumption-and-agreement-to-pay clause, so reform the
    deed as to apply the said clause to the *first* vendee, and to absolve
    the *second* vendee from all liability thereon

ACTIONS: Method of Trial—Controlling Equitable Issues. An equi-
2   table defensive issue which is virtually controlling and determina-
    tive of the law issues should be first tried.

EVIDENCE: Parol as Affecting Writings—Strangers to Instrument.
3   Principle reaffirmed that a party to a written instrument may, by

VOL. 200 IA.— 1

parol evidence, contradict its provisions *against one who was never a party thereto.*

**APPEAL AND ERROR:** Scope of Review—Trial De Novo. A strictly
4 equitable issue injected into a law action and denied transfer to the equity calendar, but tried exactly as it would have been tried in equity, will, on appeal, be treated as pending in equity.

**REFORMATION OF INSTRUMENTS:** Laches—Evidence. Record re-
5 viewed, and held to present no reason why a defrauded party should not be accorded the full statutory period for discovering a fraud perpetrated upon him.

**CONTRACTS:** Third-Party Beneficiary—Enforcement. A person who
6 is the beneficiary of, but in no manner a party to, a contract between third parties, may not enforce said contract in any different manner from what was mutually intended by said third parties.

**VENDOR AND PURCHASER:** Taking Property ''Subject'' to Mort-
7 gage—Nonpersonal Liability. A vendee of land who takes it ''subject'' to an existing mortgage is presumptively simply a purchaser of the equity of redemption. He may not be held personally liable to pay the mortgage, in the absence of some showing that he received in the transaction money or other form of benefits equal to the amount of the mortgage.

**MORTGAGES:** Promise by Third Party to Pay—Ineffectual Substitu-
8 tion. A vendee who has validly agreed with his vendor to pay the latter's mortgage on the land, may not, when sued by the mortgagee on said agreement, escape liability by showing that the said vendor, in lieu of said vendee's agreement to pay said mortgage, accepted the agreement of a subsequent vendee to make said payment, it appearing that said substituted agreement was *wholly invalid.*

**Headnote 1:** 34 Cyc. p. 923. **Headnote 2:** 38 Cyc. p. 1270. **Headnote 3:** 22 C. J. p. 1293. **Headnote 4:** 3 C. J. p. 724; 4 C. J. p. 727 (Anno.) **Headnote 5:** 37 C. J. p. 792. **Headnote 6:** 13 C. J. p. 712. **Headnote 7:** 27 Cyc. p. 1343. **Headnote 8:** 27 Cyc. p. 1348 (Anno.); 29 Cyc. p. 1134.

*Appeal from Buena Vista District Court.*—N. J. LEE, Judge.

JANUARY 20, 1925.

REHEARING DENIED MAY 15, 1925.

ACTION at law by a mortgagee, to recover the amount of the debt secured by the mortgage, from remote vendees of the land, under an assumption clause in their respective deeds. Judgment was entered against the last vendee, and denied as to a prior vendee. The prior vendee was Dealy, and the last vendees were Hawkins *et al.* The defendants Hawkins *et al.* have appealed from the judgment against them, and the plaintiff has appealed from the order of refusal of judgment against the defendant Dealy.—*Reversed on both appeals.*

*Nelson Miller* and *Ladd & Ladd,* for W. G. Hawkins, R. A. Hawkins, M. J. Lancaster, Art Detloff, Henry Detloff, and Ed Buss.

*C. E. Pendleton* and *Bailie & Edson,* for Fred Shult.

*Guy Mack,* for John Doyle and Lillie Doyle.

*Fred H. Free* and *Whitney & Whitney,* for Ed. L. Dealy.

EVANS, J.—We have before us a very complicated record, in a case the facts of which are simple enough. The pleadings in the court below occupy 66 pages of the abstract. In response to the petition, 5 demurrers, several motions, 4 answers, 3 cross-petitions, and as many replies, are set forth. Each answer contains 4 or 5 counts, and each count as many paragraphs. Our initial problem, therefore, is to reduce the issues to their lowest terms. The plaintiff sued upon a note for $9,600, and claimed recovery from all of the defendants. The note was secured by a third mortgage on a half-section farm. The defendants Doyle were the mortgagors and makers of the note; the defendant Dealy was a purchaser of the land from Doyle; the other defendants, 6 in number, were joint purchasers of the same land from Dealy. These latter named defendants are referred to in the record as the Hawkins group, and will be so referred to here, without the repetition of their many names. After Dealy had sold the farm to the Hawkins group by written contract, he procured a deed from Doyle, wherein the Hawkins group were named as the grantees. To use the language of the witness, Doyle "deeded

1. VENDOR AND PURCHASER: construction and operation of contract: assumption and agreement to pay mortgages: dual reformation.

across'' to the Hawkins group. The farm so conveyed was incumbered by three mortgages: for $36,000, $12,000, and $9,600, respectively. By the terms of the deed executed by Doyle, the grantees assumed payment of such mortgages. Dealy does not appear in the record chain of title. His purchase of the farm from Doyle was evidenced by a written contract. It was pursuant to such contract that Doyle executed the deed. By the terms of such written contract, Dealy also assumed to pay the mortgages in question. The plaintiff's action, therefore, is predicated against Doyle upon the note and mortgage; against Dealy, upon his written contract; against the Hawkins group, upon the deed wherein they appear as grantees. Prior to the execution of Doyle's deed, the Hawkins group had purchased the farm from Dealy by a written contract. By the terms of this contract, they agreed to take the farm *"subject"* to the mortgages in question. They did not assume or promise therein to pay the mortgages. They had no negotiations of any kind with Doyle. Doyle executed his deed wholly pursuant to negotiations with Dealy. He delivered his deed to Dealy. Dealy filed it for record, and mailed it, sometime later, to the other defendants. These defendants had consented to Dealy orally that the title might be conveyed to them ''across'' by Doyle, expecting that the deed would be drawn pursuant to and consistent with their written contract. They failed to discover its departure therefrom until this suit was brought against them. These are the fundamental facts upon which their defense is predicated. They deny that they ever consented to assume the mortgages, and assert that the insertion of such a clause in their deed was a fraud upon them, and was in violation of their actual contract, and was without consideration. They pray the reformation of their deed, to conform with their contract. They filed cross-petitions against Dealy and against Doyle, respectively, asking the same relief. The foregoing is the substance of the controlling facts on this branch of the case. There is another branch or feature of the case which will be considered in a separate division hereof, wherein some further facts will be noted.

Before proceeding to a consideration of the respective defenses of Dealy and the Hawkins group, we are confronted with a confusion of practice and procedure. Attack was made by

2. Actions: method
of trial: con-
trolling equitable
issues.
several demurrers upon the pleadings of the Hawkins group. These demurrers were, in several instances, sustained. Later, the demurring parties pleaded to the answer and cross-petition thus attacked by demurrer, and joined issue thereon. We shall, therefore, confine our attention to the issues as finally joined. The Hawkins group filed a motion to transfer to the equity side of the court, on the ground that they had presented an equitable issue in defense. This motion was overruled. It was later renewed, and overruled again. The case was, therefore, tried on the law side, without a jury. Upon the taking of evidence, the court on its own motion received all evidence offered, and reserved ruling on objections thereto, and in practical effect tried the case by the equitable method. The case, being submitted, was decided on its merits, without any ruling upon objections to evidence, and without any finding of facts other than such as inhere in the judgment entry.

The Hawkins defendants pleaded an equitable defense, as they had a right to do, under the statute. This did not entitle them to a transfer of the case to the equity side of the docket.

3. Evidence: parol
as affecting writ-
ings: strangers
to instrument.
It did entitle them to a trial of the equitable issues which were essential to them in their defense to the law action. So far as the plaintiff was concerned, they had no need of equitable relief. As against him, they had a right to introduce parol evidence, to vary and contradict the writing upon which he predicated his case. This is so because he was not a party to the writing. In other words, as against him they were entitled to show their actual undertaking, whether it accorded with the writing or not. *Peters v. Goodrich*, 192 Iowa 790.

But the cross-petition of these defendants against their co-defendants presented a different situation. The plaintiff was proceeding against all of them. As among themselves, the question of primary and secondary liability was important. On the face of the deed, unreformed, the Hawkins group were primarily liable. If their contentions were sustained, they would not be liable at all. Their escape from liability would operate adversely to the interest both of Dealy and of Doyle. As against these, reformation of the deed was essential, in order to make

the defense of the Hawkins defendants available at all. The reformation prayed for presented an equitable issue. It could be had only through the exercise of equity jurisdiction. It is clear, therefore, that these defendants were entitled to such trial, as of an equitable issue. The relation of this issue to the merits of the case as a whole was virtually controlling. Upon the facts so far stated, we deem it clear, therefore, that the trial court should have tried this issue in equity, and that the issue as tendered by the plaintiff in his law action should await the trial of the equitable issue, and should be subordinate thereto. ·

In view of the facts presented herein, which are shown to be exactly what they would have been if the case had been professedly tried in equity in the lower court, we deem it the best solution of the situation that we treat the issue as pending here in equity, and that we deal with it as such, *de novo*. This will better serve the interests of all the litigants than it would to remand the case for a retrial on the equitable issue.

4. A<span style="font-variant:small-caps">PPEAL AND</span> ERROR: scope of review: trial *de novo*.

I. We proceed to inquire whether the Hawkins defendants are entitled to equitable relief against that proviso in the deed whereby they purported to assume the mortgages. There can be no fair question, upon this record, but that the real undertaking of these defendants was that which was expressed in the written contract. Under this contract, they purchased *"subject"* to the mortgages. This was entered into on March 17, 1920, with Dealy as vendor. It was on the day following that Dealy entered into his contract of purchase with Doyle. By this contract, the vendee expressly "assumed" the payment of the mortgages. Dealy requested Doyle to name the Hawkins group as grantees in the deed, and it was so done. Dealy prepared the deed, and Doyle signed the same on the same day. It was then sent to Missouri, to be signed by Mrs. Doyle, and was returned by her to her husband. He delivered the same to Dealy. None of the Hawkins group had anything to do with this transaction. This method of conveyance was adopted by Dealy confessedly for the purpose of eliminating his name from the chain of title, and of avoiding the obligations which might otherwise ensue. The terms of the deed were a clear departure from the terms of the contract signed by the Hawkins group.

It was accomplished without their knowledge, and without their discovery until the beginning of this suit. The terms of the deed, however, were in accord with the terms of Dealy's contract with Doyle. If Dealy brought about this change intentionally, it was a fraud upon these defendants. If he did it inadvertently, his insistence upon the fruits of it is no less a fraud. In either event, as against Dealy, such defendants are entitled to relief. The form of that relief presents a practical difficulty. Doyle, under his contract with Dealy, is entitled to include the assumption clause in his deed, as a grantor. The Hawkins group, under their contract with Dealy, are entitled to a deed, as grantees, which shall not include the assumption clause. To reform this particular deed as prayed, would give Doyle less than he contracted for; to refuse to reform it will impose upon the grantee defendants greater obligations than they contracted for. The result is that this deed does not and cannot, in any event, represent a meeting of the minds of the grantor and grantee.

We must look, therefore, to the composite character of this particular deed. It does not, in fact, represent any particular transaction. It is an attempt to represent two transactions. By his contract with Doyle, Dealy became the equitable owner of the farm; his rights and liabilities were fully defined in his contract. By his contract with the Hawkins group, he became the vendor of the farm, and they became his vendees. By his contract with Doyle, Dealy had promised an assumption clause; by his contract with the Hawkins group, he had promised otherwise. The equitable rights of the parties are not different from what they would have been if Doyle had conveyed to Dealy, and Dealy had conveyed to his vendees. For the purpose of a remedy, equity will thus resolve the deed into its component parts. The deed actually delivered by Doyle to Dealy carried the name of Dealy's vendees, as Doyle's grantees. Some analogy may be found in that line of cases involving deeds executed in blank as to grantees, and delivered in such form to the vendees. We have held that a vendee receiving a blank deed in such form receives thereby the equitable title, and that his obligations under the terms of the deed so received, are the same as they would be if his name had been inserted in the deed. *Santee v. Keefe,* 127

Iowa 128. So in this case, if Doyle had delivered to Dealy a deed executed in blank as to grantee, and if thereafter Dealy had inserted as grantees therein the names of his own vendees, such deed, so manipulated, would be deemed in equity to have functioned as two instruments, rather than one. The assumption clause in such deed would become binding, in such event, upon Dealy, notwithstanding that his name did not appear in the record chain of conveyances. *Santee v. Keefe,* supra. To put it in another way: as between Dealy and his vendees, they are entitled to reformation, to accord with their contract with him; as between Dealy and his vendor, Doyle, the latter is entitled to an assumption clause, to accord with his contract with Dealy. The inconsistency of right which has arisen as between Doyle and the Hawkins group so arose without the fault of either. It was created by Dealy. He was the actor, and the only person to profit by the mistake.

We see no obstacle in the way of equity to fix the rights and liabilities of these parties in precise accord with what they would have been if each vendor had made due conveyance to his own vendee, in strict accord with the antecedent written contract. This would hold Dealy to the assumption clause of his contract, and would release the Hawkins group from the operations of the assumption clause contained in the Doyle deed.

There is some claim in argument that, the deed having been delivered to one of the Hawkins group, its contents ought to have been discovered, and therefore that they should be deemed

5. REFORMATION to have discovered the same, and to have ac-
OF INSTRU- quiesced. The method of the transaction was
MENTS: laches: well calculated to allay suspicion and to prevent
evidence.

discovery. The statute gave them five years in which to discover the same and to seek relief therefor. They owed no special duty of discovery to the perpetrator of the fraud, if such. No reason appears in the record why they were not entitled to the full benefit of the statute of limitations in that regard.

As to the plaintiff herein, his rights are subordinate to the real agreement entered into, as between the defendants. His rights are purely legal. They do not arise out of any equity.

6. CONTRACTS: third-party beneficiary: enforcement.   They spring alone from the express agreement of the parties, made in his behalf as a third person. *Peters v. Goodrich,* 192 Iowa 790. The cause of action thus created in his favor is a bit of legal grace; it cost him nothing; it simply fell upon him, without effort or knowledge on his part. He is entitled to it, such as it is. He has no ground of appeal to equity, either to expand it or to prevent its shrinkage. Nor is his plea of estoppel available to him, as against the very truth. *Peters v. Goodrich,* 192 Iowa 790.

II. Plaintiff contends that the Hawkins defendants are personally liable for the mortgage, even though there were no assumption clause in their contract or in their deed. This contention is predicated upon the theory that the amount of the mortgage was deducted from the purchase price, and that, therefore, as a necessary inference, such defendants received from Doyle or Dealy the full amount of the incumbrances against the land, and that, by reason of such fact, they became personally bound to the mortgagees to pay the same. If this contention be sustained, the effect would be to hold that a vendee of mortgaged land who takes a conveyance "subject" to the mortgage, assumes the same personal liability for the payment of the mortgage as a vendee who takes conveyance and therein "assumes to pay" the mortgage. There is no evidence in this record that these vendees received from any vendor the amount of money necessary to pay the mortgage on the land, unless such be the necessary inference to be drawn from the terms of the contract and of the deed. There was a consideration stated in the deed and in the contract, of $104,000. A trade was, in fact, involved. The consideration was, in part, that the vendees should deliver corporation stock of the par value of $26,000. Its actual or market value was unknown at that time. The farm was not, in fact, worth $104,000, nor was it believed by either vendor or vendees to be worth such sum at such time. Its later value proved to be just enough to pay the first two mortgages. It was sold under execution in the foreclosure of the second mortgage, and no redemption was made. The corporation stock proved to be substantially worthless. The true consideration and the manner of it are stated in the written contract. It was

7. VENDOR AND PURCHASER: taking property "subject" to mortgage: nonpersonal liability.

to be paid in the following manner: (1) By the promissory notes of the defendant, to the amount of $21,000; (2) by the delivery of corporation stock of the par value of $26,000; (3) "by second party taking the above premises subject to mortgages aggregating $57,000 which * * * shall not mature prior to March 1, 1922."

If there was any deduction of the mortgage from the purchase price, it must be found in the third provision here above quoted. As authority for his contention, the appellee relies upon *Lamka v. Donnelly,* 163 Iowa 255, and especially upon the following quotation from the opinion therein:

"It is a familiar doctrine, and the authorities are in harmony upon the proposition, that, even where there is a mortgage upon the land at the time of the sale, and the vendee retains out of the purchase price a sufficient amount to meet the mortgage, even without an expressed agreement to that effect, he will be held to have assumed the payment of the mortgage, and is personally liable for the amount to the mortgagee, and would be clearly liable to his vendor for the amount of the mortgage in the event the vendor was required to pay it."

Separating the foregoing from its context and from the facts to which it is applied, it may be conceded that it is capable of the construction which plaintiff puts upon it. But put into its own place, and read (1) in the light of the facts in the case and of the ultimate decision thereon, and (2) in the light of our previous holdings of which it purports to be a syllabus, this quoted passage will not bear the construction which plaintiff puts upon it. The facts involved in the *Lamka* case were somewhat unusual. The action was brought by a vendor against his vendee, to recover balance of purchase price. The land had been conveyed "subject" to a mortgage which purported to be for $1,100 purchase money. This mortgage had been given by the vendor to his own father. It bore 6 per cent annual interest. It contained a proviso that, upon the death of the mortgagee, the mortgage should become wholly null and discharged. In the settlement of the purchase price, the vendor permitted the vendee to withhold $1,100 of the purchase money, to protect himself against the contingencies of the mortgage. Thereafter, the mortgagee died, whereby the mortgage became

discharged, according to its own terms. Thereupon, the vendor demanded of the vendee the $1,100 purchase money left in his hands. He was allowed to recover for such balance of his purchase price. The real ground of the decision is stated therein as follows:

"This case is clearly distinguishable from those cases in which the vendee purchases subject to a mortgage,—cases wherein he does not assume or agree to become personally liable for the mortgage. The land, then, is the fund out of which, or to which, the parties must. look for reimbursement. The mortgage in this case was peculiar, having provisions in it which relieve the land and the plaintiff from all liability for the amount of the note upon the death of plaintiff's father. * * * This is a direct action to recover the unpaid portion of the purchase price from these defendants, on the theory only that they have retained so much of the purchase price from the plaintiff, and that plaintiff had, therefore, a vendor's lien upon the property, to the extent of the unpaid purchase price. The provisions in the mortgage, and what was said and done between the parties touching the mortgage, has only probative force in its relationship to these facts, and as serving to give notice of the fact upon which the plaintiff predicates his right in this action, though *action is not bottomed on the mortgage or upon the deeds. The basis of plaintiff's right to recover is not the provisions in the deed or in the mortgage, but the fact that they have retained a certain amount of the purchase price of plaintiff's land to protect them against a contingency that has passed.*"

It will be noted that the foregoing completely negatives the construction which plaintiff would put upon that part of the opinion quoted by him. A sale "subject" to a mortgage necessarily withholds the amount of the mortgage from the vendor. All that the vendor is entitled to of consideration is the surplus of agreed consideration over and above the mortgage which he excepts from his covenants. There is a sense, therefore, in which it can be said that, in every sale of land "subject" to a mortgage, the amount of the mortgage is deducted from the amount of the whole consideration or valuation of the mortgaged property. On the other hand, there is a sense in which it can also be said that, in every such sale, the vendor sells nothing but his

equity, in that he has nothing else to sell. The broad proposition thus quoted from the *Lamka* case was pronounced therein by way of illustration and argument. It was not controlling of, and only indirectly applicable to, the case then at bar. It was predicated upon a hypothetical case. The application of the rule, such as it is, has been considered in many of our previous cases, none of which support the application now contended for by the appellee. Our previous cases involving the question of personal liability of a vendee who takes conveyance "subject" to a mortgage are the following: *Johnson v. Monell,* 13 Iowa 300; *Aufricht v. Northrup,* 20 Iowa 61; *Hull & Co. v. Alexander,* 26 Iowa 569; *Lewis v. Day,* 53 Iowa 575; *Rice v. Hulbert,* 67 Iowa 724; *Bristol Sav. Bank v. Stiger,* 86 Iowa 344; *Bradley v. Hufferd,* 138 Iowa 611. The same question was indirectly involved in the following cases: *Fuller & Co. v. Hunt,* 48 Iowa 163; *Foy v. Armstrong,* 113 Iowa 630; *Marshall Inv. Co. v. Lindley,* 156 Iowa 6; *Northwestern Nat. Bank v. Sloan,* 97 Iowa 183. In each of the foregoing cases, the decision denied personal liability, as distinguished from the liability of the mortgaged property itself. In *Hull & Co. v. Alexander,* 26 Iowa 569, it was said (pages 572, 573):

"The purchase of property subject to a mortgage is one thing; while the purchase of property assuming to pay the mortgage then upon it, is quite another. In the former, the purchaser may pay the mortgage debt, or suffer the property to be sold for its payment. In the latter, he must pay the mortgage debt; and though he suffer the property to be sold under a foreclosure, if it fails to sell for enough to pay the mortgage debt, he must supply the deficit."

The foregoing pronouncement has been often repeated, and has always been adhered to in our cases.

In order to charge with personal liability such vendee who has not assumed payment, the liability must be predicated upon money or benefits had and received; and if the facts be such as to sustain such predicate, then the vendee becomes personally liable.

As regards the application of the rule in the case at bar, we need go no further, for previous authority, than the case of *Bristol Sav. Bank v. Stiger,* 86 Iowa 344. In that case, it was

claimed that the amount of the mortgage debt had been deducted from the price of the mortgaged land, because the amount thereof had not been paid by the vendee to the vendor, though he got the full benefit of the incumbered property; and that good conscience required him to pay it. We said: "Such is not the rule in Iowa." In the decision of that case, the opinion quoted authorities from other jurisdictions. Because of the special application of these quoted authorities to the case at bar, we requote them here. In *Fiske v. Tolman*, 124 Mass. 254, the language of the deed was:

"'Subject, however, to a mortgage held by the Lowell Five Cent Savings Bank of $7,000, *which is a part of the above named consideration.*'"

We quote from the Massachusetts court:

"A promise to pay the mortgage debt cannot be inferred from the acceptance of the deed, on the ground that the clause contains this reference to the consideration. Taken by themselves, the words do not necessarily imply any obligation to be performed by the grantee. They are to be considered rather as additional words of recital or description, showing that the whole amount of the consideration was not paid or intended to be paid, but that the grantee had purchased only an equity of redemption."

Again, in *Belmont v. Comon*, 22 N. Y. 438, the recited consideration in a deed was $12,000, "'subject, nevertheless, to the sum of $4,250 of mortgage on each of said houses, as follows [describing them], which said four mortgages, amounting in the aggregate to the sum of $8,500, has been estimated as a part of the consideration money of this conveyance, and has been deducted therefrom.'" The court said:

"The cases all agree that the purchaser of a mere equity of redemption, without any words in the grant importing that he assumes the payment of the mortgage, does not bind himself personally to pay the debt. * * * If the language had stopped with declaring the subjection of the land to the lien of the mortgages, it would have been the ordinary case of the purchase of a mere equity of redemption. According to all the cases, the land would have been the primary fund for the payment of the mortgages, yet without any other liability on the part of the grantee.

But the other words, it seems to me, import nothing additional or different. On the contrary, they appear to be used for greater caution. They declare that the amount of the mortgages has been deducted from the consideration which had been previously set forth. The apparent meaning of this is that so much of the purchase money as the mortgages amount to, being deducted, is not to be paid, except as it is charged upon the premises.''

A like holding was made in *Hubbard v. Ensign*, 46 Conn. 576. In that case, the covenants of warranty purported to ''except the above written mortgages of $15,000, which are a part consideration of this deed.''

The foregoing pronouncements were distinctly approved by us in the cited case. We deem them decisive of the case before us, unless there be something to the contrary in our subsequent holdings.

The appellee relies upon *Hawn v. Malone*, 188 Iowa 439, and couples this case with the *Lamka* case as authority for its contention.

It is true that the *Hawn* case cited and quoted from the opinion in the *Lamka* case, and that it adjudged personal liability against the vendee in that case. In no other sense is it an authority for plaintiff's contention. The record in that case presents vital differences from the record in this case. In that case, the questions of fact had been determined by verdict of a jury. The verdict was not challenged here, as lacking support in the evidence. The plaintiff in that case was a vendor, and the defendant was his vendee, who had taken ''subject'' to certain mortgages. The vendor was later compelled to satisfy one of said mortgages, because of the failure of his vendee to pay the same. He brought his action for reimbursement. The salient antecedent facts were that, at the time of their negotiations, the plaintiff was the owner of a Dakota farm of 400 acres, and the defendant was the owner of a Polk County farm of 240 acres. They entered into a written contract, which might be deemed either a contract of exchange or a contract of mutual purchase and sale, whereby the defendant purchased the Dakota farm from plaintiff at an agreed price of $70 per acre, and whereby the plaintiff purchased from the defendant his Polk

County farm at an agreed price of $110 per acre. The Dakota farm was incumbered, and the defendant took conveyance thereof "subject" to three mortgages, amounting to $16,100. The Polk County farm conveyed to the plaintiff was not incumbered; but, by oral arrangement between the parties, the plaintiff took conveyance thereof, and then executed mortgages thereon to secure corresponding loans for $16,000. The proceeds of these loans, save $1,000 thereof, *were paid to the defendant*, to wit, $15,000. The application of this amount upon the Dakota mortgages would have satisfied them *pro tanto*. The funds, however, were not thus used, but were retained by the defendant. His default was upon the third mortgage on the Dakota farm. The payment of this money to the defendant vendee amounted to a payment *pro tanto* of the Dakota mortgages, as between the vendor and vendee. The receipt of the money by the vendee created an implied promise on the part of the vendee that he would apply the same upon the Dakota mortgages. The liability in such a case is analogous to that for money had and received. Granted that the vendee would not be liable to a greater extent than the amount of money that he received, yet the personal liability enforced against him was materially less than that. The hypothetical case stated in the *Lamka* opinion found its apt illustration in the *Hawn* case. That portion of the opinion in the *Lamka* case upon which plaintiff specially relies as authority has its application to just such a case. It was cited and quoted in the *Hawn* case in support of that very application.

Nothing of that kind appears in the case at bar. There was no receipt of funds of any amount by the vendees in any other sense than that of mathematical computation, whereby the amount of the mortgage was deducted from the recited consideration in the contract, and the vendees promised to pay only the balance thus ascertained. The vendees literally performed their contract. They delivered the stock; they paid their notes; they recognized the liability of the mortgaged property to the payment of the mortgages. Such property has been wholly devoted to that end, and has been wholly exhausted by the first two mortgages. Sufficient to say that in none of our cases have we ever charged a personal liability against a vendee, upon facts similar or legally equivalent to those appearing in the case at

bar. We deem it clear, upon this record, that neither Doyle, as vendor of Dealy, nor plaintiff Shult, as mortgagee of Doyle, is entitled to charge personal liability against these vendees.

III. It remains to consider the defense of Dealy, as against the plaintiff. Stated briefly, this is that, though Dealy bound himself originally to assume the mortgage, yet, by a process of novation, he had obtained a release from such obligation from his vendor, Doyle, in that Doyle had accepted the Hawkins defendants as a substitution for Dealy. The legal proposition contended for is that the vendor Doyle, as mortgagor, had the same power to release and discharge Dealy from that obligation as he had to bind him to it in the first instance, provided that it was done before the mortgagee had knowledge of the contract or had accepted the same. Conceding the general proposition contended for on the authority of *Gilbert v. Sanderson*, 56 Iowa 349, yet the agreement with Doyle for substitution, upon which Dealy relies for his discharge, is under attack as being invalid. We are sustaining the attack. Doyle was entitled to an assumption clause from Dealy. He agreed to accept one from the Hawkins defendants, in lieu thereof. This implied a valid agreement from the Hawkins defendants. He did not obtain it, and Dealy was in no position to procure it for him. This being so, Dealy is in no position to claim any benefit from such attempted contract with Doyle. The effect of our holding in the first division hereof is to treat Doyle as having conveyed to Dealy by deed containing the assumption clause. He has no valid assumption clause as against the Hawkins defendants. He was, and is, entitled to one from one vendee or the other.

8. MORTGAGES: promise by third party to pay: ineffectual substitution.

We think, therefore, that this defense necessarily falls, with our finding under the first division hereof. The result of our holding is that the case must be reversed on each appeal.—*Reversed on appeal of Hawkins defendants; reversed on appeal of plaintiff.*

FAVILLE, C. J., and STEVENS, ARTHUR, VERMILION, and ALBERT, JJ., concur.