H. H. LOCKIN, Executor, et al., Appellants, v. H. A. WELTY, Appellee.

DECEMBER 14, 1928.

*Molyneux, Maher & Meloy,* for appellants.

*H. E. Narey* and *Cornwall & Cornwall,* for appellee.

DE GRAFF, J.—The primary dispute arises on a transaction involving an exchange of properties between the defendant, Welty, and one P. H. Harrington, not a party to this suit. The contention of the defendant, Welty, is that the transaction involved merely an exchange of equities. It is clear that there was no express assumption of payment by Welty of the mortgage

indebtedness in question. It follows, therefore, that the plaintiff must rely upon the implications arising from the transaction and the language of the Harrington-Welty contract presently noted.

At the outset it may be stated that whatever inference or implication arises from said contract is fully rebutted by direct and positive evidence. The theory and argument of appellant are bottomed upon the doctrine of *Lamka v. Donnelly*, 163 Iowa 255, *Hawn v. Malone*, 188 Iowa 439, and *Shult v. Doyle*, 200 Iowa 1. That doctrine, briefly stated, is that, where an incumbrance is deducted from the purchase price agreed upon between the parties, without an express agreement to pay the incumbrance, an agreement to pay will be implied. In the last analysis, the question is: Whose obligation is it?

The language of the contract between Harrington and Welty does not disclose the true intent of the parties as to the assumption of payment of the mortgages referred to in said contract. Whether there was a sale or an exchange of properties cannot be conclusively determined by the fact that there was a fixed price at which the exchange was to be made. As said in *Dimmitt v. Johnson*, 199 Iowa 966:

"It is a fairly safe criterion, but is not absolute. Whether there is a sale or an exchange depends upon the intent at the time; and no fixed rule can be prescribed in determining that intent under all circumstances, but it must be determined from the peculiar circumstances of the particular transaction."

Let us turn for a moment to the facts of the instant case. P. H. Harrington, of Slayton, Minnesota, was, in 1917, the owner of 240 acres of Cottonwood County, Minnesota, land. The defendant, H. A. Welty, Spirit Lake, Iowa, at that time was the owner of 55 head of registered Aberdeen Angus cattle, 19 head of Shetland ponies, and a residence property in Arnold's Park, Iowa. Apparently these parties desired to trade, but neither desired to invest cash in consummating the transaction. Harrington, as a witness upon this trial, was not able to detail the preliminary conversations that he had with Welty prior to the execution of the contract, and he would not "swear to any words that passed between Mr. Welty and me." Welty, on the

other hand, had a distinct remembrance of the conversations, and, among other things, testified:

"I told Harrington that I would give him my equity in my home and these cattle and the ponies for his equity in this piece of land."

The contract for the exchange of the respective properties was drawn, upon the mutual request of the parties, by Attorney Leslie E. Francis, then of Spirit Lake, Iowa. The attorney's recollection of what happened prior to the drafting of the contract is clear and distinct. His testimony is as follows:

"These gentlemen (Harrington and Welty) came to me at the time stated (1917), for the purpose of having me draw a contract covering an exchange of their respective properties. I can state with absolute certainty that, when these gentlemen came to me, they advised me that they were making an exchange of their respective properties, and wished me to draw a contract of exchange. They also said to me that Mr. Harrington was agreeing to buy the Minnesota farm back from Mr. Welty, and that they wished a contract drawn, covering the purchase thereof. They gave me their respective equities, and together we computed same, and arrived at the difference, evidently making an error, hereinbefore referred to. It had been my custom for years, in drafting contracts relative to real estate, to recite that one of the parties sold and the other purchased; and although this was an exchange of equities, I evidently followed that custom, rather than to set out the facts given me by these gentlemen, upon which I based the contract. It was expressly stated both by Mr. Harrington and by Mr. Welty that, in this exchange of equity, they were assuming no incumbrance upon the properties thus exchanged. Mr. Harrington stated in that connection that he had either not seen the property [Arnold's Park] he was getting, or had just driven by, and knew but little about it, and would not assume any incumbrance; and Mr. Welty did not seem positive as to the character of the Minnesota land."

It is evident from the testimony of the attorney, and it is stated by him, that he was laboring under the impression that, unless a party to such a contract expressly assumed the incumbrance when properties were exchanged, as in this case, there

arose "no obligation to pay incumbrance." The attorney testified:

"If I was mistaken in that particular, it was my error, and not that of either Mr. Harrington or Mr. Welty, as they were both explicit and definite in their statement to me that they were making an exchange, and were unwilling to assume any part or portion of the incumbrance thereon."

There was a mortgage incumbrance on the Arnold's Park property, and, in the deed executed by Welty to Harrington, conveying title to this parcel of real estate, reference is made in the deed to said mortgage, but there is no assumption clause. The facts further disclose that there were two contracts drawn at the same time by Attorney Francis, upon the request of Harrington and Welty: one for the exchange of the properties hereinbefore mentioned, and the other for the resale of the Minnesota farm by Welty to Harrington. In fact, Welty never took possession of the Minnesota farm, although a deed to the Minnesota farm was executed by Harrington and delivered to Welty. That deed bore date July 12, 1917, and it recites the usual covenants, and, *inter alia*, that the land is free from incumbrances, "except mortgages as follows: One of $10,000 to the Gold Copper Securities Company, and one of $3,000 to J. C. Lockin." There was no assumption clause in this deed. It is the last mentioned mortgage note of $3,000 which is involved in this action, and which Lockin's assignee (appellant Lora E. Tinkham) seeks to enforce against Welty on an implied assumption.

It is further shown that, in the contract of exchange of property between Harrington and Welty, Harrington was given the right to incumber said property with two mortgages, before conveyance to Welty. The contract reads:

"Second party [Harrington] shall place upon said premises [Minnesota land] a first mortgage in as large an amount as he can procure at 5%, taking a second mortgage for the balance at the rate of 5½%, both of said mortgages to mature on or before five years from date thereof."

The two mortgages to which reference has been made were placed by Harrington, pursuant to this contract provision, and it may be observed that the $3,000 mortgage was made on a direct loan by J. C. Lockin to Harrington.

In the light of the entire record, it is obvious that the mere recital of a fixed consideration in the contract between Harrington and Welty, "to be paid as hereinafter specified," and a further recital that Welty agreed to buy of Harrington the described Minnesota land, are not controlling or conclusive as to the intent (as claimed by appellant) of the parties to said contract. We conclude that the plaintiff failed to sustain the burden of proof. Plaintiff relied upon mere inference, to establish the pleaded assumption of the indebtedness, and as the implication arising from the contract in question has been fully rebutted, the trial court ruled correctly this phase of the case.

The second count of plaintiff's petition is predicated upon the pleaded fact that "J. C. Lockin, representing himself and the plaintiff Lora B. Tinkham, extended and granted an extension for the period of one year on the principal due on said note and mortgage," and that it was agreed between said J. C. Lockin and H. A. Welty "that the loan should be extended for the period of one year from the date of its maturity, and the said Welty, upon the consideration of the extension of said loan for one year, then and there agreed to pay the same, and thereby became absolutely bound to pay the said indebtedness." This count is based upon correspondence between Lockin and Welty, and also upon a claimed oral agreement between said parties. We deem it unnecessary to set out the correspondence or the claimed oral conversations between the parties. It is sufficient to state that the evidence is not sufficient to establish the claimed liability in this particular. It is apparent that the plaintiff was not misled to his prejudice by reason of anything said or done by the defendant. The correspondence between Welty and J. C. Lockin (now deceased) does not create a contract. There is no evidence that discloses that J. C. Lockin was authorized to speak for Mrs. Tinkham or make any promise in her behalf. The oral conversations are quite indefinite, and cannot be viewed as sufficient to constitute a contract. In brief, the plaintiff has failed to sustain the burden.

The findings of the trial court are amply supported by the record. Wherefore, the judgment entered is—*Affirmed.*

STEVENS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.