L. T. RICHARDSON, Appellee, v. BLANCHE I. STEWART, Executrix, et al., Appellants.

No. 41815.

MARCH 7, 1933.

REHEARING DENIED JUNE 23, 1933.

Everett Waller and F. W. Lohr, for appellants.

Marks, Marks & Eik, for appellee.

Evans, J.—The first transaction was had on April 21, 1925, by and between Mrs. Holman (now deceased) as mortgagor, and J. E. Turner, as mortgagee, under the assumed name of M. E. Cowan. The note and mortgage represented a loan from Turner to Mrs. Holman. The transaction was wholly free from any fraud or intended fraud against the mortgagor. We will consider first the evidence as it pertains to the first transaction.

The defense is predicated upon the provisions of section 9469, of the chapter on Negotiable Instruments, which provides that a check drawn to a fictitious person, known to be such by the maker, will be deemed payable to bearer. The contention for the appellant is that Mrs. Holman, the maker of the note and mortgage, did not know that the named payee was fictitious. It is further contended that the burden rests upon the plaintiff to prove such knowledge on the part of Mrs. Holman. Mrs. Holman died August 2, 1930, and this suit was brought after her decease. Turner died some four or five years previous. Only circumstantial evidence therefore is available to either party on this issue. One of the witnesses for the defendant was C. L. Joy, an attorney, who had been the attorney of Turner on and prior to the time of this transaction. Joy testified as follows:

"He told me at the time he was thinking about these loans he was going to take them in the name of M. E. Cowan. Miss Stewart I think drew up the mortgage and notes. I mean Cowan. I had some conversation with him why he used the name Cowan. He had some trouble with J. W. Gray with reference to assessments and he didn't want Gray to know that he was making the loan. He made the loan to Mrs. Holman in order to take up a mortgage Gray had on the property. Gray was the county assessor for Sioux City township at that time."

Cross-examination by Mr. Eik:

"That is J. E. Turner's signature on Exhibit C, my attention being called to just below the filing date of the recorder of Woodbury County where the name of J. E. Turner appears.

"Court: Did you know about these transactions at the time the same were had. A. All of them, yes. In fact, I was attorney for Turner for years. He was a great fellow to come up and get a lot of free advice and go to somebody else and have the instruments drawn up, but he spoke to me about these instruments, how he was going to make them and so forth, and I guess Miss Stewart drew the papers."

Turner was a single man, who was engaged mainly in the "roofing business". He was thrifty and frugal and temperamentally secretive. He made an occasional real estate loan in the form similar to those herein. He had been well acquainted with Mrs. Holman and her son for twenty-nine years, and visited at their home. The mortgage in question appears from the foregoing evidence to have been made for the purpose of taking up an existing mortgage owing by Mrs. Holman and held by one Gray. Blanche Stewart was a young business woman, who managed the Meyer Insurance Agency. She was a notary public. The mortgage was executed and delivered in her office. She drew the mortgage and the note. She acted presumptively for Mrs. Holman. She was well acquainted with both parties. On the 22d day of April, 1925, Turner sold and assigned the note and mortgage to the plaintiff at par. The plaintiff has ever since had the same in his possession, claiming to own the same. Miss Stewart witnessed the assignment of the note and mortgage on this date, and, as a notary, took the acknowledgment of Turner thereto. She knew that Turner was assuming therein the name "Cowan". The body of the note indicates that ten interest coupons were attached thereto representing the semiannual installments of interest. These installments were all paid and the coupons taken up in the course of the life of the mortgage. The note was drawn to mature on the 1st day of May, 1930. On April 18, 1930, Miss Stewart, acting for Mrs. Holman, obtained from the plaintiff, Richardson, an extension of time whereby the indebtedness was made to mature on the 1st of May, 1932. An instrument was drawn to that effect, as follows:

"Exhibit B.

"Sioux City, 4—18, 1930

"It is hereby agreed between Sarah E. Holman and L. T. Richardson, holder of a certain note for $1,900 and of a mortgage

on lots 6 and 7 in block (5), of Orchard Hill securing the same dated April 21, 1925, and due May 1st, 1930, and signed by said Holman, that the note and mortgage are extended and *made payable* as though the due date were May 1st, 1932, and not 1930.

"[Signed]   L. T. Richardson
"[Signed]   Sarah E. Holman."

The foregoing instrument was a clear acknowledgment of plaintiff's ownership of this note and mortgage.

II.   We pass to a consideration of the $1,600 note and mortgage. This mortgage covered other property than the first. The note and the mortgage were made to the same payee. It was executed and delivered on June 20, 1925, and was assigned to plaintiff, Richardson, two days later. The assignment of this mortgage, like that of the other one, was acknowledged before Miss Stewart, as notary. She had the same knowledge then as she had acquired in the first transaction. So far as appears from the record, no attempt at secrecy was made by Turner as between him and Mrs. Holman and Miss Stewart and Richardson. The extension agreement on April 18, 1930, indicated a recognition of plaintiff's title to the $1,900 note and thereby implied the knowledge and acquiescence of Mrs. Holman in the assumed name. If she knowingly acquiesced in the form of the $1,900 note, this itself was a circumstance tending to ·show that she knew that Cowan was an assumed name in *each* case. She must be deemed to have known in the second transaction whatever she learned in the first.

The alleged moral turpitude involved in the transaction as urged by counsel for defendant, is that Turner was doing this for the purpose of escaping taxation. It appears that Gray held a mortgage against Mrs. Holman upon this property and that such mortgage was to be supplanted by the substitution of Turner's. Gray was the assessor and Joy testifies that Turner had had some trouble with him; whether as assessor or otherwise does not appear. The fact that Turner immediately transferred each mortgage at par to Richardson within forty-eight hours after the acquisition would of itself tend to rebut the idea that he was contemplating an evasion of taxes by the use of the assumed name. In any event, the question is an immaterial one herein. No fraud was attempted or intended against Mrs. Holman. If the use of this assumed name had been resorted to as a method of perpetrating a fraud, a different question would be presented.

We have already noted that the defendant predicated defense upon section 9469. That section has to do primarily with the question of negotiability. Counsel for appellant have failed to distinguish between those facts which ·affect the assignability of the note and those that affect only its negotiability. The material question in this case is not whether the notes had lost their negotiability, but whether they were valid as between the parties thereto. For the purpose of the discussion, we may concede that they were not negotiable under section 9469. We may also concede, for the purpose of discussion only, that the mortgage was not entitled to record for want of a proper acknowledgment. Even this does not affect its validity as between the parties. In Blackman v. Henderson, 116 Iowa 578, 87 N. W. 655, 56 L. R. A. 902, we said (quoting the syllabus) :

· "A mortgage on real estate, executed by the owner thereof in the name of a fictitious person, to whom the owner has made a fictitious conveyance is valid as between mortgagor and mortgagee."

We have sustained in equity warranty deeds delivered in blank as to the grantee. In such cases we have held that the person contracting for the deed and receiving delivery of the same will be deemed as a grantee. Santee v. Keefe, 127 Iowa 128, 102 N. W. 803; Shult v. Doyle, 200 Iowa 1, 201 N. W. 787; Gilmore v. Shearer, 197 Iowa 506, 197 N. W. 631, 32 A. L. R 733; Royal Union Life Insurance Co. v. Hughes, 205 Iowa 563, 218 N. W. 251.

Without pursuing the discussion into further details, and in view of the fact that there was no taint of fraud in either transaction, we think that the circumstances attending the transaction and the subsequent execution of the extension agreement of the first note, are of sufficient weight as circumstances to warrant the trial court in finding that what was done was so done with the knowledge and acquiescence of Mrs. Holman. The fact that she could have no substantial objection to the method adopted, in that it did not operate to her injury—is of itself a circumstance worthy of consideration. Whether the note could be deemed negotiable or the mortgage recordable, we do not consider. We do hold that the instruments were good as between Mrs. Holman and Turner, and that the plaintiff has shown that he had acquired all the right and interest of Turner.

The judgment below is accordingly—affirmed.

KINDIG, C. J., and ALBERT, DONEGAN, and STEVENS, JJ., concur.