14325

FIRST CAROLINAS JOINT STOCK LAND BANK OF COLUMBIA v. DuBOSE *ET AL.*

(186 S. E., 514)

Before DENNIS, J., Darlington, March, 1934.

42

46

48

*Messrs. Samuel Want* and *Adrian A. Spears,* for appellant,

*Mr. Jas. R. Coggeshall,* for respondent, 

July 3, 1936.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

During the year, 1923, O. W. Windham obtained a loan from the respondent on its regular thirty-three-year amortization plan, which provided that the failure to make any payment when due would cause the full amount to become payable at once upon the option of the mortgagee. This loan was secured by a mortgage on three tracts of land containing 123 acres, one of which contained 43 acres, and for convenience will be referred to as "Tract A." About two years later Windham executed to W. J. DuBose a purchase-money mortgage for $5,200.00 on a 40-acre tract that day bought from DuBose, and included therein as additional security "Tract A." About a month thereafter Windham for the express consideration of $5.00 and assumption of mortgage indebtedness conveyed all of his property to his wife, Fannie. In 1931, O. W. Windham and Fannie, his wife, sold and conveyed by usual deed "Tract A" to W. J. DuBose for the express consideration of $3,000.00, the actual consideration being an agreement by W. J. DuBose to pay the notes and mortgage of O. W. Windham to respondent as the payments became due. About eight months thereafter, in December of 1931, DuBose reconveyed "Tract A" to Fannie and Ollie Windham upon the agreement that the contract of assumption theretofore agreed upon be rescinded.

Respondent in February, 1932, brought an action against Ollie and Fannie Windham, W. J. DuBose, and others, and alleged that under the agreement between W. J. DuBose and Windham, he, DuBose, had assumed the payment of the debt from Ollie Windham to respondent and was liable to it for any deficiency. Fannie and Ollie Windham by cross-answer claimed certain rights against DuBose, alleged fraud and damages, and sought recovery on their own part also against him. All of these matters between the Windhams and DuBose have been adjudicated by a finding of the Circuit Judge favorable to DuBose, as has also been concluded by the same decree the contention of DuBose that his agreement was within the Statute of Frauds, there having been no appeal from such holding by any party in interest. The record also discloses that there has been a settlement betwixt the Windhams and DuBose in relation to all land transactions, and the 40-acre tract (not connected with the lands going to make up the 123 acres mortgaged to respondent) has been reconveyed by the Windhams to DuBose.

Accordingly, the questions presented to this Court are, first, whether an agreement between grantor and grantee whereby the grantee assumes payment of an existing mortgage debt on the property conveyed can be by such original parties rescinded before acceptance by the mortgagee; and, second, whether in this particular case there has been such acceptance on the part of the mortgagee.

A more detail statement could serve no useful purpose in a determination of the two questions presented, one of fact and the other of law.

The only evidence presented on the part of the respondent to show an acceptance on its part is to the effect that one of the installments being delinquent after the deed to DuBose, its agent called upon Windham for the payment, and Windham advised the respondent of the conveyance to DuBose and advised taking up the matter with DuBose, who made the payment. Thereafter, when an

installment again became delinquent respondent again demanded payment of Windham, and when the agent went to DuBose at the request of Windham the second time, the agent was advised that he, DuBose, would make no further payments and expected to reconvey the property to the Windhams and settle any claim against him. The fact that respondent, after receipt of one payment by DuBose, gave DuBose no notice of other payments, and in no manner dealt with him concerning the contract, and, upon the happening of another delinquency, again called on Windham and took up with DuBose at his request when he was advised of the agreement to reconvey, shows that it refused to accept the agreement between Windham and DuBose, and received the one payment from DuBose as a payment in Windham's behalf, and not originally as a claim against DuBose. After the conveyance back by DuBose, and in 1932, without the appointment of a receiver or any notice to DuBose, the agent of the respondent took charge of the property and had the Windhams execute to it a rent contract for the year 1932. The actual conduct of the respondent is conclusive that there was no acceptance by it.

This leaves for consideration the legal issue first stated. While this Court has held in numerous cases and it is the settled law of this jurisdiction, that one assuming by grant the existing liens against the grantor is held to such agreement in the absence of contractual relations with the lien holder or mortgagee, such decisions will be found to have always revolved about a situation where the original mortgagor and grantor had never released the grantee who assumed the debt. Such is true of *South Carolina Insurance Company v. Kohn,* 108 S. C., 475, 95 S. E., 65, and in fact all other decisions in our jurisdiction. Here the mortgagor (grantor) and grantee have formally rescinded their agreement, and the original mortgagee has not only failed to accept such agreement, but has failed, after notice of its existence, to recognize it until after its rescission.

While there is a conflict of authority in the jurisdictions elsewhere, the better reason and the greater weight of authority is that such an agreement to assume a debt is binding between the grantor and grantee from the moment of its execution, but inures to the benefit of the mortgagee only after his acceptance. As the grantor continues liable to the mortgagee regardless of his agreement with the grantee, unless by the mortgagee released, there can be little advantage to him until concluding a contract with the mortgagee releasing him, and this is particularly true in these long time loans that extend beyond the life expectancy of the usual borrower; the future financial worth of any one over such a length of time is a most doubtful business security. The agreement is beyond the security, is originally between grantor and grantee, and when these two original parties rescinded their agreement no damages can possibly be sustained by the mortgagee unless he has by contract, expressed or implied, bound the grantee to the payment. It was not his contract, he paid nor received any consideration, nor was he a party to it, and he may greatly prefer the original borrower as the occupant of the farm. As said in *Shult v. Doyle*, 200 Iowa, 1, 201 N. W., 787, 790, cited in 47 A. L. R., 344, note:

"The cause of action thus created in his favor is a bit of legal grace; it cost him nothing; it simply fell upon him, without effort or knowledge on his part. He is entitled to it, such as it is. He has no ground for appeal to equity either to expand it or to prevent its shrinkage."

"*Release by grantor.* (a) *Before acceptance by mortgagee.*" "In the majority of jurisdictions it is held that a contract between a mortgagor and his grantee, whereby the latter assumes and agrees to pay the mortgage debt, may be rescinded at any time before the mortgagee has accepted the agreement or asserted his rights thereunder." Note 21 A. L. R., 462, citing a number of cases from California, Indiana, Kentucky, Minnesota, New Jersey, and New York.

"The assumption contract may be rescinded, or the grantee released therefrom by the mortgagor, so long as the mortgagee has done nothing to show his adoption of the contract or his acceptance of the grantee as the principal debtor. After the mortgagee has accepted or adopted the contract, or acted on the faith of it, the rule followed in the great majority of states is that it is not in the power of the parties, as against the rights of the mortgagee, and in the absence of his consent thereto, to change or annul it. An acceptance of, or acting upon, the assumption agreement by the mortgagee, precluding its rescission by the parties thereto, is evidenced by the bringing of an action on the agreement by the mortgagee, *but not by his acceptance of a payment of interest on the mortgage by the grantee.*" (Italics added.) 41 C. J., 749, § 815.

"Where the vendee as part consideration for land agrees to pay a mortgage thereon the promise is for the benefit of the mortgagee, but it may be rescinded by the parties who made it at any time before the mortgagee has asserted any rights thereunder." Note 40 L. R. A. (N. S.), 674; *Jones v. Higgins,* 80 Ky., 409; *Colvin v. Newell,* 8 Ky. Law Rep., 959.

This is the rule in Indiana: *Berkshire Life Ins. Co. v. Hutchings,* 100 Ind., 496, holding that while the relation between the mortgagor and the grantee who has assumed and agreed to pay the mortgage debt, remains unchanged by acceptance by the mortgagee, the relations between the mortgagor and grantee may be terminated by a *bona fide* rescission of their contract, and the case then becomes the same as if no contract ever existed, and in such event the right of the mortgagee as against the grantee will no longer exist.

And see *Huffman v. Western Mortg. & Investment Co.,* 13 Tex. Civ. App., 169, 36 S. W., 306, holding that "where the parties to a conveyance of land rescind the conveyance, a contemporaneous release by the grantor of the grantee upon his agreement to pay a mortgage upon the land is valid

as against the mortgagee, who has not yet accepted the grantee as his debtor." Note 40 L. R. A. (N. S.), 675.

"On the theory that it is a general rule of chancery that, as to strangers to a contract, parties may at their pleasure abandon it and mutually release each other from its performance, it has been held that the grantee of land is not liable upon his promise to assume and pay a mortgage upon the land, where the grantor and grantee thereafter, rescind the conveyance, including such agreement, before any action by the mortgagee has been commenced to foreclose the mortgage. *Biddel v. Brizzolara,* 64 Cal., 354, 30 P., 609." Note 40 L. R. A. (N. S.), 675.

In *Gold v. Ogden* (1895), 61 Minn., 88, 63 N. W., 266, a release of a grantee in whose name a deed from a mortgagor containing a contract of assumption had been made without his knowledge or consent was upheld, it not appearing that the mortgagee had accepted or acted on the covenant in any manner. Note 21 A. L. R., 464.

"According to the weight of authority, the parties to a contract entered into for the benefit of a third person may rescind, vary or abrogate the contract as they see fit, without the assent of the third person, at any time before the contract is accepted, adopted or acted upon by him."

Note 81 A. L. R., 1292, and citing Annotations in 21 A. L. R., 439, 47 A. L. R., 339, 53 A. L. R., 178, and various decisions.

For the reason stated, the decree is reversed in so far as it affects the appellant W. J. DuBose, and the case remanded for the entry of judgment in his favor with costs. In all other respects it is affirmed.

Messrs. Justices Bonham and Fishburne concur.

Mr. Chief Justice Stabler and Mr. Acting Associate Justice C. J. Ramage dissent.

Mr. Justice Carter did not participate.

MR. CHIEF JUSTICE STABLER (dissenting):

For the reasons stated by his Honor, Judge Dennis, in his decree, which will be reported, I think the judgment of the Circuit Court should be affirmed.

MR. ACTING ASSOCIATE JUSTICE RAMAGE concurs.