UNITED STATES of America,
Plaintiff,

v.

McDONALD GRAIN and SEED COM-
PANY, a corporation; Cecil McDonald;
Public Service Commission of the State
of North Dakota; the McCabe Com-
pany, a corporation; Tri-State Mutual
Grain Dealers Fire Insurance Compa-
ny, a corporation; and American Sure-
ty Company of New York, a corpora-
tion, Defendants.

Civ. No. 2997.

United States District Court
D. North Dakota,
Southeastern Division.

Sept. 20, 1957.

See, also, D.C., 135 F.Supp. 854.

Ralph B. Maxwell, Asst. U. S. Atty., Fargo, N. D., and George R. Springborg, Atty. in Charge, St. Paul Field Office, Office of General Counsel, St. Paul, Minn., for plaintiff.

Herbert G. Nilles (of Nilles, Oehlert & Nilles), Fargo, N. D., and John A. McEachron, Jr. and George D. McClintock, Jr. (of Faegre & Benson), Minneapolis, Minn., for the moving defendant, McCabe Co.

Vernon Johnson (of Johnson & Milloy), Wahpeton, N. D., for defendants McDonald Grain & Seed Co., and Cecil McDonald.

Mart R. Vogel (of Wattam, Vogel, Vogel, Bright & Peterson), Fargo, N. D., and William D. Flaskamp (of Meagher, Geer, Markham & Anderson), Minneapolis, Minn., for defendant American Surety Co. of New York.

Gerald G. Glaser, Bismarck, N. D., for defendant Public Service Commission of N. D.

Manfred R. Ohnstad, West Fargo, N. D., for defendant James E. Leahy, trustee in bankruptcy for McDonald Grain & Seed Co. a bankrupt corporation.

REGISTER, Chief Judge.

This is a suit brought by the United States of America, plaintiff, as the real party in interest, based upon claims of the Commodity Credit Corporation for alleged conversion of grain.

Commodity Credit Corporation is an agency and instrumentality of the United States, within the Department of Agriculture, and was created by the provisions of Title 15 U.S.C.A. § 714. The purpose of said corporation is specified in that section, and incidental to the carrying out of its purpose, said corporation is engaged in the business of acquiring, storing and selling grain.

Defendant McDonald Grain and Seed Company, a corporation (hereinafter called "McDonald"), was a public warehouseman duly licensed by the State of North Dakota to operate public grain warehouses at Barney and Moselle, North Dakota.

The Public Service Commission of the State of North Dakota was appointed trustee of McDonald as an insolvent grain warehouseman by order of the District Court of Burleigh County, Fourth Judicial District, State of North Dakota, on July 30, 1954, pursuant to Chapter 60–04 of the North Dakota Re-

vised Code of 1943, and now is such trustee pursuant to said order.

McDonald, on or about August 16, 1954, filed its petition in bankruptcy in this Court and on said date was duly adjudicated a bankrupt. Mr. James E. Leahy is the duly appointed and acting trustee in said bankruptcy proceeding, and as such has been made an additional defendant herein by order of the Court.

Cecil McDonald was at all times pertinent the President and General Manager of McDonald, and is alleged to have participated in the alleged conversions.

The McCabe Company (hereinafter referred to as "McCabe") is a corporation engaged in the grain business in Minneapolis, Minnesota, and is duly licensed to do, and at all times here involved was doing, business as a grain commission firm in the state of North Dakota.

American Surety Company of New York was the surety upon the statutory warehouseman's bonds given by McDonald to the State of North Dakota.

Tri-State Mutual Grain Dealers Fire Insurance Company is a foreign corporation licensed to do business as an insurer of grain warehouses and their contents in this state. Plaintiff alleges that said corporation issued a certain fire insurance policy covering grain contents in the elevators of McDonald during the time here involved, and that while such policy was in effect a fire in one of such elevators destroyed a substantial amount of corn and grain, all owned by plaintiff, in the aggregate value of $42,622.29. Liability under said policy of insurance has been admitted, and the total amount thereof, with interest, has been deposited in this Court pursuant to court order.

Commodity Credit Corporation is the owner and holder of a number of warehouse receipts representing quantities of grain received and stored by McDonald pursuant to the terms of a "Uniform Grain Storage Agreement" executed by Commodity and McDonald under date of August 21, 1952, which receipts remain unsatisfied. As owner and holder of such receipts, plaintiff as the real party in interest brought this action against McDonald, American Surety Company of New York, McCabe and others to recover the value of the grain represented by such receipts.

On May 13, 1953, Commodity, McDonald and McCabe entered into an agreement relative to the delivery and shipment of Commodity owned grain from McDonald to McCabe (as "Grain Agent"). Thereafter McDonald sold quantities of flax and other grains to McCabe. The plaintiff contends that some of the grain so shipped by McDonald, and purchased by McCabe, was owned by Commodity and that such sales constituted conversions by McDonald and McCabe.

Two motions are now before the Court —a motion to dismiss the complaint against McCabe, and a motion to dismiss the cross-complaint of the defendant American Surety Company of New York against McCabe. Said cross-complaint is based upon the claim that said defendant American Surety Company is subrogated to the rights of the plaintiff against McCabe.

The motions for dismissal now under consideration are based upon the proposition that Chapter 60–04 of the North Dakota Revised Code of 1943 is applicable to the present situation, and that the complaint and cross-complaint referred to in said motions, fail to state a claim against McCabe upon which relief can be granted.

On July 24, 1954, McDonald did not have sufficient grain in store to cover all outstanding warehouse receipts. On or about July 25, 1954, the Public Service Commission of the State of North Dakota took custody of all grain in the warehouses and elevators of McDonald, and on or about July 26, 1954, instituted proceedings in the District Court of Burleigh County for its appointment as trustee of McDonald, a then insolvent warehouseman, within the meaning of said Chapter 60–04, N.D.R.C.1943, which proceedings resulted in the order of July 30, 1954.

The applicable portions of said Chapter 60–04, N.D.R.C.1943, which are of par-

ticular importance to this discussion will be quoted, and are as follows:

"60–0402. Insolvency of Warehouseman: Trust Fund Established. Whenever any warehouseman, by reason of the destruction of his warehouse or for any other cause, shall refuse or neglect, upon proper demand, to redeem any receipt issued by him, such warehouseman shall be deemed to be insolvent within the meaning of this chapter, and a trust fund for the redemption of outstanding storage receipts of such warehouseman shall consist of the following:

"1. All the grain in said warehouse;

"2. The proceeds of insurance policies upon stored grain destroyed in said warehouse;

"3. The cause of action for damages upon any bond given by said warehouseman to the state of North Dakota to insure faithful performance of his duties as a warehouseman; and

"4. The cause of action for the conversion of grain stored in said warehouse.

"60–0403. Appointment of Commission as Trustee. Upon the insolvency of any warehouseman, the commission shall apply to the district court of Burleigh County for appointment of itself as trustee of said fund. Upon such notice to said warehouseman as the court shall prescribe, but not exceeding ten days, or upon waiver of such notice in writing by said warehouseman, the court shall proceed to hear and determine such application in a summary manner. If it shall appear to the court or to the judge thereof, that such warehouseman is insolvent within the meaning of this chapter and that it would be for the best interests of the receipt holders that the commission shall execute such trust, he shall issue an order appointing the commission trustee,

without bond, of said fund, whereupon the commission shall proceed to perform its duties as such trustee without further direction from said court.

"60–0404. Notice to Receipt Holders. Upon its appointment as trustee, the commission shall be entitled to the possession of all the books and records of such warehouseman required by law to be kept by him and shall take possession peaceably or by appropriate action of such books and records and of all grain on hand in such warehouse and thereupon shall procure the delivery to it of all receipts shown to be outstanding by the books of said warehouseman for the purpose of enforcing the provisions of this chapter. If the commission * * * (etc.).

"60–0405. Remedy of Receipt Holders. No receipt holder shall have a separate cause of action upon the warehouseman's bond, nor for insurance, nor against any person converting said stored grain, nor against any other receipt holder, except through such trustee, unless, upon demand of five or more receipt holders, the commission shall fail or refuse to apply for its own appointment as trustee. Nothing contained in this chapter shall be construed to prohibit or prevent any receipt holder, either individually or in conjunction with other receipt holders, from pursuing concurrently such other remedy as he may have against the person or property of such warehouseman, for the whole, or any deficiency occurring in the redemption, of said receipts.

"60–0406. Commission to Marshal Trust Assets. The commission, in its capacity as trustee, upon the delivery to it of the receipts issued by the insolvent warehouseman, may maintain suits at law or in equity, or any special proceeding, in the name of the state of North Dakota, upon its own relation, but for the

benefit of all such receipt holders against:

"1. The insurers of said stored grain;

"2. The warehouseman's bond;

"3. Any person who may have converted any of such stored grain; or

"4. Any receipt holder who shall have received more than his just and pro rata share of said stored grain. for the purpose of marshaling all of the trust assets of said insolvent warehouseman and distributing the same among said receipt holders. The remedy against the insurers of such stored grain shall be exhausted first before recourse is had against said bond, and against such bond before recourse is had against the person honestly converting such grain, unless the commission shall deem it necessary to the redemption of said storage receipts that all the above remedies be pursued at the same time.

"60–0407. Power of Commission to Prosecute or Compromise Claims. The commission shall have power:

"1. To prosecute any action provided in sections 60–0405 and 60–0406 in any court in this state or in any other state;

"2. To appeal from any adverse judgment to the courts of last resort;

"3. To settle and compromise any such action whenever, in its judgment, this will be for the best interests of the receipt holders; and

"4. Upon payment of the amount of such compromise or of the full amount of any insurance policy, bond, or conversion claim, to exonerate the person so compromising or paying in full from further liability growing out of said action."

Section 60–0408 requires that all moneys collected and received by the commission as trustee shall be deposited in the Bank of North Dakota. Section 60–0409 specifies the method of filing the trustee's report, the contents thereof, and further provides that " * * * In the event that the fund shall prove insufficient to redeem all receipts in full, the same shall be prorated among them in such manner as the trustee shall deem fair and equitable. * * * " Said section further provides for a hearing relative to the trustee's report (following notice to all receipt holders) before the court, following which the court shall issue an order directing the distribution of the fund, and either approving or modifying such trustee's report.

There is no question of jurisdiction here. The Commodity Credit Corporation Charter Act specifically provides that the district courts of the United States shall have exclusive jurisdiction of all suits brought by or against the Corporation. Title 15 U.S.C.A. § 714b (c). It is clear that the Federal courts have exclusive jurisdiction over causes of action which Commodity has the right to prosecute. The general power to sue and be sued is specifically conferred upon said Corporation by said subsection. If a cause of action, as pleaded, exists in favor of the plaintiff and against McCabe, the motions for dismissal now before the Court should be denied. If the North Dakota statute applies, there is no such cause of action, and the motions should be granted.

The purpose of Chapter 60–04 is eminently clear. It is an effort to provide an orderly and feasible method of redemption of outstanding storage receipts of insolvent warehousemen, and to provide a fund to indemnify creditors; it is for the benefit of *all* holders of such receipts. That this is a proper subject for legislation by the state is beyond question. An examination of the statute discloses that the means adopted are appropriate to this lawful end. It provides for the marshaling and collection of all grain assets of the insolvent warehouseman for the benefit of all receipt holders. "It protects the rights of all receipt holders by preventing a race in which the first and the best financed gets paid to the exclusion of others. It eliminates the

possibility of collusion between the first claimants and parties liable. It permits the establishing of all claims in one simple, inexpensive proceeding. It does not burden the individual warehouse receipt holder with the expense of litigation against the warehouseman, against the bonding company, against the insurance company and against any convertors. It does not burden the courts with a multiplicity of suits. It also protects the bonding company, fire insurance company, and any grain firm charged with conversion of stored grain, from unlimited claims and the unnecessary expense of multiple suits without in any way releasing them from whatever liability they might have." Brief of Defendant McCabe, pp. 4, 5. The warehouseman's bonds "run to the state of North Dakota for the benefit of all persons storing or selling grain in such warehouse", as required by state law. Sec. 60–0209, N.D.R.C.1943. The obvious purpose of such bonds is to provide additional security for the benefit of holders of all unsatisfied receipts. That an individual ticket holder does not have a right to bring a separate action under North Dakota law has been judicially established. Phillips v. Semingson, 25 N.D. 460, 142 N.W. 47. Section 60–0405, supra, provides that "*No* receipt holder shall have a separate cause of action * * *" except upon certain expressly stated contingencies not applicable here. (Emphasis added.) There are no statutory exceptions.

It is interesting to note that, at the time of the hearing on the motions here involved, in response to a specific question by the Court, counsel for both plaintiff and McCabe stated that plaintiff became the owner and holder of all unsatisfied warehouse receipts here involved by virtue of transfer or assignment from individual holders thereof.

▪ Plaintiff, in its brief, strenuously asserts that "Federal, not North Dakota laws are to control the rights of the United States to collect from a convertor of grain owned by the Commodity Credit Corporation, and the matter is to be de-

termined by the Federal Courts, unlimited by North Dakota law". Plaintiff also asserts that "the Commodity Credit Corporation, as an agency and instrumentality of the United States, has the same powers as the sovereign", and avers that a modern statement of the general rule is found in Reconstruction Finance Corporation v. Breeding, 10 Cir., 211 F.2d 385, at page 389, wherein it is recited that

"The rule is too firmly established to permit of question that where the United States acts within the permitted scope of its governmental authority, the question of the creation or negation of an express or implied liability of an individual or a municipal subdivision of a state to the United States is to be determined by federal law. And unless Congress has provided otherwise, the right of the United States to enforce in a federal court such a liability may not be defeated or limited by state law."

That the general rule is as stated by said court is beyond question. However, immediately following the quoted portion, and citations supporting that court's conclusions, said court reasons as follows:

"But this is not an action instituted by the United States as a sovereign for the enforcement of an express or implied liability due it. This action was instituted by the Finance Corporation. The Finance Corporation is a corporation created by Act of Congress. All of its stock is owned by the United States. It is a wholly owned governmental agency with wide powers, and since its creation it has conducted financial operations on a wide scale. By express Congressional mandate, it has power to sue and be sued in any court of competent jurisdiction. But when acting as a litigant in a court of competent jurisdiction, it is not clothed with the prerogatives or immunity of the sovereign. Keifer & Keifer v. Reconstruction Finance Corp., 306

U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784; Reconstruction Finance Corp. v. J. G. Menihan Corp., 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595."

In United States v. Edgerton & Sons, Inc., 2 Cir., 178 F.2d 763, 764, a case involving the Commodity Credit Corporation, the court discusses the corporation's charter, the immunity expressly conferred by the Act, and its legislative history, and states that

"When the United States conducts business transactions through a corporation, the tendency of recent decisions is to hold that such corporation does not possess sovereign immunity unless expressly endowed with it. Reconstruction Finance Corp. v. J. G. Menihan Corp., 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595; Federal Housing Administration, Region No. 4 v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724; Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784; Sloan Shipyards Corp. v. U. S. Shipping Board Emergency Fleet Corp., 258 U.S. 549, 567, 42 S.Ct. 386, 66 L.Ed. 762."

In the recent case of United States v. Kramel, 8 Cir., decided June 20, 1956, and reported at 234 F.2d 577, the Farmers Home Administration was involved. There the court said, at page 580:

"Setting to one side the question of constitutional power, is this Act to be construed as displacing State law governing or affecting titles to property and tort actions for claimed violation of property rights? We have searched through this entire Act to ascertain whether expressly or by fair implication any such broad purpose is indicated therein. Clearly, there is no direct expression to be found. Nor is there any such intention implied."

■ Of course, the fact that this action is brought in the name of the United States instead of Commodity does not give plaintiff any greater right than if the action had been brought in the latter's name. The Commodity Credit Charter Act contains the following express provision in the subsection granting Commodity the power to sue and be sued:

"Any suit by or against the United States as the real party in interest based upon any claim by or against the Corporation shall be subject to the provisions of the subsection (c) of this section to the same extent as though such suit were by or against the Corporation, except * * * (reciting exceptions not applicable here)." Title 15 U.S.C.A. § 714b (c).

Therefore, an action brought in the name of the United States, under this Act, is for all intents and purposes an action of Commodity, and the latter cannot, by bringing an action in the name of the United States, acquire rights, privileges or immunities of the United States which it would not have in an action instituted in its own name.

The basic principles applied in the Kramel case, supra, seem applicable here. In that case plaintiff sued, in tort, for conversion of a chattel covered by its mortgage. Under Missouri law the defendant commission company was not liable for conversion. The plaintiff United States contended that "the rights of the United States in this case are governed by federal law * * *" and that the "Federal policy as announced in 18 U.S.C.A. § 658 designed to protect the Farmers Home Administration from conversion of mortgage security requires that appellees be held liable in conversion".

■ Counsel for plaintiff in the instant case attempt to distinguish the cases and point out that in the Kramel case, supra, the court emphasizes that the defendant, under Missouri law, was a public utility. However, the statutory duties against discrimination imposed by North Dakota law (Section 60–0220, N.D. R.C., 1943) in the case of warehousemen are similar to those discussed in the Kramel case, supra. In fact, such warehousemen are public utilities, operating under license from the Public Service

Commission and subject to the laws of this state. Counsel for plaintiff also assert that the Kramel case "dealt with a problem of substantive property rights, rather than a procedural statute such as 60–04". However, chapter 60–04, N.D. R.C., 1943, is more than procedural; it does affect substantive property rights. By operation of said law, immediately upon appointment of the Public Service Commission as trustee, all causes of action belonging to receipt holders are assigned or transferred to the trustee. While such transfers are for the purpose of collection for the benefit of all such holders, the law operates as a complete and effective transfer of title to such causes of action. This being true, no cause of action remains in plaintiff herein, the same being vested in said trustee, unless the Charter Act of Commodity, expressly or by fair implication, derogates the state law affecting such cause of action, in order to effectuate the purposes it intended to accomplish by the Act. United States v. Kramel, supra.

■ This Court has carefully examined the Charter Act pertinent hereto and is unable to find any such expression or provisions giving rise to any such fair implication. The Act does provide that the corporation

> "Shall have all the rights, privileges, and immunities of the United States with respect to the right of priority of payment with respect to debts due from insolvent, deceased, or bankrupt debtors. The Corporation may assert such rights, privileges, and immunities in any suit, action, or proceeding." Title 15 U.S. C.A. § 714b(e).

This provision is inconsistent with the provisions of the North Dakota statute providing that "In the event that the fund shall prove insufficient to redeem all receipts in full, the same shall be prorated among them in such manner as the trustee shall deem fair and equitable". Section 60–0409, N.D.R.C., 1943. As to the right of priority of payment the federal Act controls, and such right can be asserted in the state court having jurisdiction of the trustee.

The Charter Act further provides, in Section 714b(g), that said Corporation

> "May enter into and carry out such contracts or agreements as are necessary in the conduct of its business. State and local regulatory laws or rules shall not be applicable with respect to contracts or agreements of the Corporation or the parties thereto to the extent that such contracts or agreements provide that such laws or rules shall not be applicable, or to the extent that such laws or rules are inconsistent with such contracts or agreements."

Because of this provision, the Court has carefully examined the agreements hereinbefore referred to and finds nothing contained therein which is inconsistent with the state law involved.

Specific immunity is conferred in favor of Commodity by the provisions of Section 714b(c) of the Charter Act against the issuance of attachment, injunction, garnishment, or other similar process, mesne or final, against the Corporation or its property. However, as far as this Court can determine, the only preference in favor of Commodity, as against all other receipt holders, concerns payment of the claim. There is no preference, express or to be reasonably implied, concerning the *existence* of a cause of action. As to the existence of a cause of action, Commodity stands on an equal basis with all other unsatisfied receipt holders. There appears to be nothing in the Act which expressly, or by reasonable implication, justifies such a construction as to supersede or replace state law governing or affecting title to property, or affecting property rights, including accounts receivable and choses in action.

In the Kramel case, supra, the state law involved barred the plaintiff, a governmental agency, from making any recovery; it took away all liability for the alleged conversion on the part of the defendants. In the Edgerton case, supra, the effect of the state law involved was to create a property right, a warehouse-

man's lien for storage, against property of Commodity. The effect of the North Dakota law here involved is to provide for an assignment or transfer of a claim against an insolvent debtor to a trustee for the benefit of Commodity as well as for all other similar creditors. The vital point is that in both the Kramel and Edgerton cases, supra, the courts held that the state laws were applicable. Also see: Sig Ellingson & Co. v. De Vries, 8 Cir., 199 F.2d 677.

In the event that North Dakota law does not apply in an action such as the instant one, an extremely difficult and confusing situation, both from a legal and practical standpoint, might develop. In the case of an insolvent warehouseman, where the Public Service Commission was appointed trustee under the state law, such trustee might proceed to marshal all of the trust assets and might sue all insurers of the stored grain, all convertors of the grain, and the surety on the warehouseman's bond, for the purpose as set forth in the state law. At the same time an action might be instituted by Commodity, on its alleged causes of action, in the United States District Court, against the same parties who are defendants in the trustee's suit in state court. This would be the inevitable result under certain facts and conditions. Surely a purpose or intent to do that which could only result in such confusion and expense should not be imputed to Congress unless the circumstances, and reasons therefor, are so cogent as to render that result inevitable. The reasons constituting the basis for plaintiff's contentions should not only be substantial but convincing and compelling.

It seems to this Court that the facts and circumstances giving rise to the Kramel case, supra, the situation and condition of the parties, the laws and the basic question there involved are analogous to those in the instant case. It seems that the reasoning of the court in that case is appropriate here, and that the application thereof would produce a similar result.

For the reasons hereinbefore stated, it is the opinion of this Court that the North Dakota statute aforesaid does apply, that the respective motions for dismissal should be granted, and that the action against the defendant McCabe should be dismissed.

It has been so ordered.