**UNITED STATES of America,**
**Appellant,**

v.

**The McCABE COMPANY, a Corporation,**
**Appellee.**

**AMERICAN SURETY COMPANY OF**
**NEW YORK, Appellant,**

v.

**The McCABE COMPANY, a Corporation,**
**Appellee.**

Nos. 15984, 15988.

United States Court of Appeals
Eighth Circuit.

Nov. 26, 1958.

Rehearing Denied Jan. 12, 1959.

Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. General, and Robert Vogel, U. S. Atty., Fargo, N. D., were with him on the brief), for appellant United States.

O. C. Adamson, II, Minneapolis, Minn. (William D. Flaskamp and Meagher, Geer, Markham & Anderson, Minneapolis, Minn., were with him on the brief), for appellant American Surety Co. of New York.

Geo. D. McClintock, Jr., Minneapolis, Minn. (John C. Benson, Minneapolis, Minn., Herbert G. Nilles, Fargo, N. D., Faegre & Benson, Minneapolis, Minn., and Nilles, Oehlert & Nilles, Fargo, N. D., were with him on the brief), for appellee.

Before JOHNSEN, VAN OOSTERHOUT, and MATTHES, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

The United States has appealed from final judgment dismissing its complaint against The McCabe Company, a corporation (McCabe). American Surety Company of New York (American Surety) has appealed from final judgment dismissing its cross-complaint against McCabe. The judgment dismissing as to McCabe was entered after the court, before trial, had sustained McCabe's motions to dismiss the complaint and the cross-complaint upon the ground that they did not state a cause of action. The appeals involve common questions of law and fact. The relevant facts are stated, and the applicable statutes are quoted in the trial court's opinion. United States v. McDonald Grain and Seed Company, D.C.N.Dak., 154 F.Supp. 329.

This suit was brought by the United States, as the real party in interest, to recover damages from McCabe for conversion of grain upon which the Commodity Credit Corporation (Commodity) held warehouse receipts issued by defendant McDonald Grain & Seed Company (McDonald). McDonald was licensed as a public warehouseman under North Dakota law and was authorized to operate public grain warehouses at Barney and Moselle, North Dakota. Commodity, in carrying out its grain support price program, authorized by 15 U.S.C.A. § 714, entered into a uniform grain storage agreement with McDonald. At the time McDonald became insolvent Commodity was the owner of numerous warehouse receipts covering stored grain, issued by McDonald. McCabe was a licensed grain commission firm. McCabe entered into a grain agent's agreement with Commodity and McDonald, under which it was to act as agent for McDonald in making shipment and delivery of grain covered by warehouse receipts owned by Commodity as ordered by Commodity.

During the period from May 25, 1954, to July 29, 1954, Commodity, through McCabe, directed McDonald to make deliveries on certain warehouse receipts. A substantial number of these orders were not filled. On July 24, 1954, it was established that McDonald did not have sufficient grain in storage to meet its outstanding warehouse receipts. On July 25, 1954, defendant Public Service Commission of the State of North Dakota took possession of all grain remaining in the possession of McDonald, and on the following day instituted state court proceedings which resulted in its appointment as trustee of McDonald, an insolvent warehouseman, in accordance with the provisions of Chapter 60-0403 of the North Dakota Revised Code

(1943). McDonald on its own petition was adjudged a bankrupt on August 16, 1954.

The United States commenced this action in the United States District Court on August 10, 1954, naming McDonald, McCabe, the Public Service Commission, American Surety, and other necessary parties as defendants. American Surety, surety on McDonald's statutory warehouse bond, filed a cross-complaint against McCabe, asserting that it is entitled to be subrogated to the rights of Commodity against McCabe. The rights of the surety on its cross-complaint are ancillary to, and dependent upon, the rights of the United States upon its claim against McCabe for conversion.

Both appellants in their pleadings stated that between July 31, 1953, and July 30, 1954, McCabe purchased from McDonald and converted to its own use substantial quantities of grain owned by Commodity, evidenced by its warehouse receipts, thus causing damages in excess of $100,000.

McCabe filed motions to dismiss the complaint and the cross-complaint for lack of jurisdiction and failure to state a claim upon which relief could be granted. The motions were first heard and overruled by Judge Davies. Due to Judge Davies' absence from the district, the case was placed on Judge Register's assignment. Judge Register vacated Judge Davies' order and, after hearing arguments on the motions to dismiss and on motions for reconsideration, he sustained the motions, and entered judgment dismissing the complaint and the cross-complaint. These appeals are from such judgment.

The court properly found that it had jurisdiction. 15 U.S.C.A. § 714b provides:

"General powers of Corporation

\* \* \* \* \* \*

"(c) May sue and be sued, but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Corporation or its property. The district courts of the United States, including the district courts of any Territory or possession, shall have exclusive original jurisdiction, without regard to the amount in controversy, of all suits brought by or against the Corporation: \* \* \* Any suit by or against the United States as the real party in interest based upon any claim by or against the Corporation shall be subject to the provisions of subsection (c) of this section to the same extent as though such suit were by or against the Corporation \* \* \*."

This statute clearly confers jurisdiction of this action upon the United States District Court.

The trial court held that Chapter 60–04 of the North Dakota Revised Code (1943) transferred the conversion cause of action to the Public Service Commission and that, consequently, neither the United States nor American Surety had a cause of action against McCabe for conversion. The North Dakota statutes relied upon by the trial court are set out at pages 332 and 333 of its opinion (154 F.Supp.). The effect of these statutes is to establish, upon insolvency of a licensed warehouseman, a trust fund consisting of, inter alia, any cause of action for conversion of grain covered by warehouse receipts (60–0402). The Public Service Commission is required to apply to the North Dakota state court for appointment of itself as trustee (60–0403). Chapter 60–0405 provides, "No receipt holder shall have a separate cause of action upon the warehouseman's bond, nor for insurance, nor against any person converting said stored grain, nor against any other receipt holder, except through such trustee, unless, upon demand of five or more receipt holders, the commission shall fail or refuse to apply for its own appointment as trustee." Provision is made for legal proceedings by the trustee to marshal trust assets (60–0406). The trustee is authorized to prosecute and compromise all claims (60–0407). The trustee is required to account for and distribute the trust fund, and in the event

the fund shall prove insufficient to redeem all receipts, "the same shall be prorated among them in such manner as the trustee shall deem fair and equitable" (60–0409).

The Government makes a rather persuasive argument that the North Dakota warehouse statutes are not intended to apply to a situation such as is here presented, where at the time the court made its ruling Commodity was the only unsatisfied receipt holder, and the Public Service Commission, which was a defendant in the action, acquiesced in the right of the United States to bring the action.

While the motions to dismiss were pending, the United States and the Public Service Commission entered into a stipulation whereby the United States agreed that the Public Service Commission should, out of funds in its hands, pay in full the claims of all other holders of McDonald's warehouse receipts, and the Public Service Commission agreed that it would not actively oppose the right of the United States to prosecute this suit. Certified copies of the final report of the Public Service Commission, as trustee, to the state court and the order approving the report after notice to all claimants are in the record. The report provides for the payment in full of all receipt holders, other than Commodity, and for the payment of the balance remaining to Commodity to apply upon its receipts. The order approves the management of the trust and the recommendation made for the disposition of trust funds, but does not close the trust because of the pendency of this action.

The policy underlying the state warehouse statutes creating the trust fund for the benefit of all receipt holders and prohibiting suits by individual creditors upon assets assigned to the trust fund is stated by the trial court, as follows (at pages 333–334 of 154 F.Supp.):

" * * * It protects the rights of all receipt holders by preventing a race in which the first and the best financed gets paid to the exclusion of others. It eliminates the possibility of collusion between the first claimants and parties liable. It permits the establishing of all claims in one simple, inexpensive proceeding. It does not burden the individual warehouse receipt holder with the expense of litigation against the warehouseman, against the bonding company, against the insurance company and against any convertors. It does not burden the courts with a multiplicity of suits. It also protects the bonding company, fire insurance company, and any grain firm charged with conversion of stored grain, from unlimited claims and the unnecessary expense of multiple suits without in any way releasing them from whatever liability they might have. * * * "

It would seem that none of the foregoing policy considerations underlying the statute apply here. Commodity is the only unsatisfied receipt holder. No race between creditors is in sight. We can discover no reason why the Public Service Commission should carry on the complicated litigation here involved for the benefit of a single creditor against the will of such creditor. The burden of the litigation upon the courts would be diminished, rather than increased, by permitting the sole party in interest to conduct the litigation. It should not be any more burdensome for the alleged wrongdoer to defend the present action than it would be for it to defend a conversion action brought by the Public Service Commission. No marshaling of assets or equitable considerations appear to be involved. Moreover, it would appear that the prime purpose of the North Dakota legislation is to protect the receipt holders rather than the wrongdoer. Chapter 60–0403, relating to the appointment of the trustee, contemplates that the best interests of the receipt holders be considered in determining whether a trustee be appointed. The statute contains the provision, "that it would be for the best interests of the receipt holders that the commission shall execute such trust."

The trial court apparently took the position that the provisions of Chapter 60–0405, heretofore quoted, barring this type of action by an individual creditor is absolute under all circumstances. The North Dakota courts have not interpreted the statute with respect to the problem here confronting us. We have repeatedly recognized that state law should be interpreted by state courts, and that on doubtful questions of local law we should not lightly set aside the interpretation of state law made by the trial judge. Homolla v. Gluck, 8 Cir., 248 F.2d 731, 733. We doubt whether we would be justified in finding that the trial court misinterpreted the applicable North Dakota law. We are thus confronted with the issue of whether the state legislation controls in our present situation and whether it is effective to wipe out a cause of action in favor of the United States, which arises as an incident of a lawful governmental operation engaged in pursuant to an act of Congress.

 Appellants assert that when the United States, acting pursuant to constitutional acts of Congress, enters into large scale transactions requiring uniform administration, questions of rights and liabilities must be uniformly determined by federal law. The Supreme Court has consistently so held. United States v. Standard Oil Co., 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067; United States v. Allegheny County, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209; Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838. It is clear that the rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, does not apply to actions to enforce rights of the United States acting under its constitutional powers. United States v. Standard Oil Co., supra, 332 U.S. at page 305, 67 S.Ct. at page 1606; Clearfield Trust Co. v. United States, supra, 318 U.S. at page 366, 63 S.Ct. at page 574; United States v. Latrobe Construction Co., 8 Cir., 246 F.2d 357, 363; United States v. Kramel, 8 Cir., 234 F.2d 577, 580.

 The trial court recognizes and quotes the rule stated in Reconstruction Finance Corporation v. Breeding, 10 Cir., 211 F.2d 385, 389, as follows (at page 334 of 154 F.Supp.):

"The rule is too firmly established to permit of question that where the United States acts within the permitted scope of its governmental authority, the question of the creation or negation of an express or implied liability of an individual or a municipal subdivision of a state to the United States is to be determined by federal law. And unless Congress has provided otherwise, the right of the United States to enforce in a federal court such a liability may not be defeated or limited by state law."

The trial court then goes on to state that the rule does not apply to the facts in this case since the government acted through a corporation, and cites United States v. Edgerton & Sons, Inc., 2 Cir., 178 F.2d 763, in support of its position that sovereign immunity does not extend to Commodity. An examination of the Edgerton case discloses that it was decided upon the basis of the law as it existed before the 1948 amendment. At the time of the Edgerton decision, Commodity was a Delaware corporation, and its powers were not as extensive as they are under present law. The court in the Edgerton decision, as a basis for its conclusion, points to the broader powers given Commodity by the present law.

In United States v. Rainwater, 8 Cir., 244 F.2d 27, we held that a false claim submitted to Commodity Credit Corporation was a violation of the act proscribing false claims against the United States. We there discussed in some detail legislation creating Commodity. Our decision was affirmed by the Supreme Court. Rainwater v. United States, 356 U.S. 590, 78 S.Ct. 946, 2 L.Ed.2d 996. The Supreme Court during the course of its opinion states, 356 U.S. at pages 591–592, 78 S.Ct. at page 948:

"Commodity is an 'agency and instrumentality of the United States, within the Department of Agriculture, subject to the general supervision and direction of the Secretary

of Agriculture.' It was created by Congress to support farm prices and to assist in maintaining and distributing adequate supplies of agricultural commodities. Its capital was provided by congressional appropriation. Any impairment of this capital, which at times has been great due to the nature of its activities, is replaced out of the public treasury; any gains are returned to that treasury. * * * In brief, Commodity is simply an administrative device established by Congress for the purpose of carrying out federal farm programs with public funds."

The Rainwater case clearly establishes that Commodity is an instrumentality of the United States, designed to carry out governmental functions through the use of public funds.

In support of the contention that state law governs, McCabe and the trial court rely largely upon our opinion in United States v. Kramel, supra. Appellants insist that Kramel is distinguishable factually from our present case. We agree. In the Kramel case the court found that under the law of Missouri the defendant as a commission man was bound to serve all, that possession of personal property was prima facie evidence of ownership, and that a commission broker who sold livestock subject to mortgage, without notice thereof, was not guilty of conversion. Thus, the court found that under Missouri law the tort alleged had not been committed.

■ In our present case there has been no trial of the factual issues. For the purposes of these appeals, we must assume the truth of the allegations of the pleadings that the warehouse grain was wrongfully converted. It is not contended that McCabe was not guilty of conversion under the allegations of appellants' pleadings. McCabe's position is that the statute has taken away appellants' title to the cause of action and placed it in the Public Service Commission.

It is true, as pointed out by McCabe, that the Supreme Court at times has followed state law in determining federal rights. In the Kramel case, supra, 234 F.2d at page 580, we quote from United States v. Standard Oil Co., supra, to the effect that in certain instances the application of local law affords a fair and convenient mode of disposing of issues affecting the government's interest. In Commissioner of Internal Revenue v. Stern, 357 U.S. 39, 44, 78 S.Ct. 1047, 2 L.Ed.2d 1126, the liability of a transferee for delinquent taxes was determined upon the basis of state law exempting the proceeds of life insurance from decedent's debts. Kramel does not hold that under all circumstances federal rights must be determined upon the basis of state law.

We do not have before us on the present appeals the issue of whether state law controls on the question of whether or not McCabe is a converter. The only problem is whether a cause of action, accruing to the United States in carrying out its governmental function of supporting the economy, can be taken away by state legislation. Article VI of the Constitution provides that the Constitution and laws of the United States made in pursuance thereof shall be the supreme law of the land. See United States v. Allegheny County, supra, 322 U.S. at page 182, 64 S.Ct. at page 913. No contention is made that Congress did not act within its constitutional powers in creating Commodity. "When the United States disburses its funds or pays its debts, it is exercising a constitutional function or power." Clearfield Trust Co. v. United States, supra, 318 U.S. at page 366, 63 S.Ct. at page 575. In United States v. Allegheny County, supra, the Court states, 322 U.S. at page 183, 64 S.Ct. at page 913:

"* * * The purpose of the supremacy clause was to avoid the introduction of disparities, confusions and conflicts which would follow if the Government's general authority were subject to local controls. The validity and construction of contracts through which the United States is exercising its constitutional functions, their consequences on the rights and obligations of the parties,

the titles or liens which they create or permit, all present questions of federal law not controlled by the law of any State. [Supporting authorities cited.]"

The federal judicial power "remained unimpaired for dealing independently, wherever necessary or appropriate, with essentially federal matters, even though Congress has not acted affirmatively about the specific question." United States v. Standard Oil Co., supra, 332 U.S. at page 307, 67 S.Ct. at page 1608. See also United States v. Latrobe Construction Co., supra, 246 F.2d at page 362.

As we have heretofore pointed out, it is the function of Commodity to carry out the federal farm program with the use of federal funds. An examination of 15 U.S.C.A. § 714 discloses no intention on the part of Congress to have federal rights determined by state courts. On the contrary, 714b(c), heretofore quoted, vests exclusive jurisdiction of all suits for or against the corporation in the federal court. Section 714b(e) gives Commodity all rights, privileges, and immunities of the United States with respect to the right to priority of payment due from an insolvent debtor. Section 714b(g) grants Commodity power to carry out contracts necessary in the conduct of its business, and provides: "State and local regulatory laws or rules shall not be applicable with respect to contracts or agreements of the Corporation or the parties thereto to the extent that such contracts or agreements provide that such laws or rules shall not be applicable, or to the extent that such laws or rules are inconsistent with such contracts or agreements."

We believe that it is clear from the provisions just quoted and the federal statute as a whole that Congress had no intent to make the federal rights of Commodity subservient to state law. We find nothing in the contracts or agreements here involved which amount to a waiver of the government's right to litigate the issue here presented in the federal court. The provisions of the state law giving the state court exclusive jurisdiction in the form of an action by the trustee and authorizing the Commission to compromise trust claims and determine priorities are inconsistent with the rights of the United States under federal law.

McCabe's contention that Commodity acquired its receipts by assignment from individual receipt holders, and hence has no greater rights than its assignors, is without merit. All warehouse receipts were either owned by or pledged to Commodity. The grain was stored and the receipts were issued under contract between McDonald and Commodity as a part of the comprehensive support program. Commodity had acquired its interest in the receipts prior to the time of the alleged conversion.

The question of what law should govern in determining whether McCabe converted the warehouse grain is not involved in these appeals. McCabe has not urged in its motions that the acts it is charged with do not amount to conversion.

Possibly, under some circumstances, a federal court in the proper exercise of its discretion might be justified, as a matter of comity, in refusing to take jurisdiction, when appropriate relief is being administered in a state court. The trial court's action in the present case was not based upon such an exercise of discretion, but was based on its conclusion that the state law took away from the United States its cause of action. Moreover, since the United States is the sole receipt holder and the rights of no other creditors are involved, there is no basis in the present case for declining jurisdiction on a discretionary basis.

The federal law giving the United States, as the real party in interest, the right to sue upon claims due Commodity, and giving the federal court exclusive jurisdiction over suits involving Commodity control under the factual situation presented by this case.

The court ered in dismissing the complaint of the United States and the cross-complaint of American Surety.

Reversed and remanded.