UNITED STATES of America, Plaintiff,

v.

WEST VIEW GRAIN COMPANY, a Corporation, and St. Paul Mercury Indemnity Company, a Corporation, Defendants.

UNITED STATES of America, Plaintiff,

v.

D. E. BENTON COMPANY, a copartnership, and St. Paul Mercury Indemnity Company, a Corporation et al., Defendants.

Civ. No. 818, Central Division.
Civ. No. 1076, Western Division.

United States District Court
N. D. Iowa.
Dec. 2, 1960.

F. E. Van Alstine, U. S. Dist. Atty., Sioux City, Iowa, for plaintiff.

James R. McManus, Des Moines, Iowa, for defendant, St. Paul Mercury Indemnity Co.

Robert R. Rydell, Asst. Commerce Counsel, Des Moines, Iowa, for Iowa State Commerce Commission, amicus curiae.

GRAVEN, District Judge.

There are a number of issues in these two cases between the plaintiff and the several defendants. In each of the cases there is a common legal question between the plaintiff and the defendant, St. Paul Mercury Indemnity Company, which those parties desired to have passed upon by the Court in advance of the trial of the other issues.

The defendant, West View Grain Company, a corporation, in case No. 818 Civil and the defendant, the D. E. Benton Company, a copartnership, in case No. 1076 Civil were bonded warehousemen under the provisions of Chapter 543, Code of Iowa 1958, I.C.A., which Chapter is entitled Bonded Warehouses For Agricultural Products. In each case the defendant, St. Paul Mercury Indemnity Company, was a surety on the warehouseman's bond furnished by those defendants under the provisions of that Chapter. In the first case the bond was originally in the principal sum of $53,000. It was increased by later endorsements to the principal sum of $62,000. In the second case the bond is in the principal sum of $38,000.

The Commodity Credit Corporation entered into agreements with each of these warehousemen under which it stored with them grain owned by it. The warehousemen issued warehouse receipts for such grain. It is the claim of the plaintiff that each of the warehousemen failed to deliver to the Commodity Credit Corporation the quantity and quality of grain specified in the warehouse receipts. In the first case it is the claim of the plaintiff that the damages sustained by the Commodity Credit Corporation because of alleged breaches of contract were in the sum of $23,345.64. In the second case it is the claim of the plaintiff that the damages sustained by the Commodity Credit Corporation because of alleged breaches of contract were in the sum of $38,184.38.

In each case the plaintiff brought the action as the real party in interest based on the claim of the Commodity Credit Corporation. It asks judgment in each case against the defendant, St. Paul Mercury Indemnity Company, on the latter's warehouseman's bond. Under Chapter 543, the Iowa State Commerce Commission exercises supervision over warehouses within the scope of that Chapter. Because of the importance of the question involved, the Iowa State Commerce Commission asked for and was given leave to file a brief amicus curiae, which it did. In its application to intervene, the Iowa State Commerce Commission stated that on December 1, 1957, there were 985 warehouses in the state licensed under Chapter 543, Code of Iowa 1958, I. C.A., and that on that date 134,946,584 bushels of grain were stored therein and that warehousemen's bonds furnished pursuant to the provisions of that Chapter totalled $45,531,200. It is well known that the Commodity Credit Corporation was and is the largest storer of grain in the state. It becomes the owner of grain in connection with the Government's farm price support program. The legal issue here under consideration is whether the plaintiff may maintain ac-

tions on the warehousemen's bonds in question. The Court held a hearing on that issue at which oral arguments were made. The parties have submitted extensive briefs.

Section 543.12 of Chapter 543 provides, in part, as follows:

"Any person applying for a license or licenses to conduct a warehouse or warehouses in accordance with this chapter shall, as a condition to the granting thereof, execute and file with the commission a good and sufficient bond, other than personal security, to secure the faithful performance of his obligations as a warehouseman under the terms of this chapter and the rules and regulations prescribed hereunder, and of such additional obligations as a warehouseman which may be assumed by him under contracts with depositors of agricultural products in such warehouse. * * *"

Section 543.14 of Chapter 543 provides as follows:

"Any person injured by the breach of any obligation of a warehouseman, for the performance of which a bond has been given under any of the provisions of this chapter, may sue on such bond in his own name in any court of competent jurisdiction to recover any damages he may have sustained by reason of such breach."

The bonds in question were in the form prescribed by the Iowa State Commerce Commission. They recite that they are given in connection with the issuance of a warehouseman's license under Chapter 543. They recite that the warehouseman as principal and the St. Paul Mercury Indemnity Company as surety are held and bound unto the State of Iowa for the "use and benefit of any persons lawfully entitled to receive the same in compensation for damages growing out of the operation" of a warehouse under Chapter 543. The bonds are conditioned that the principal shall faithfully perform the duties of a licensed warehouseman in conformity with the provisions of Chapter 543.

Section 543.1 of that Chapter is entitled, "Terms defined." It reads, in part, as follows:

"Terms defined. As used in this chapter:

* * * * * *

"7. 'Person' shall mean an individual, corporation, partnership, or two or more persons having a joint or common interest in the same venture, *but shall not mean the United States or Iowa state government or any subdivision or agency of either."* (Emphasis supplied.)

It is the claim of the defendant, St. Paul Mercury Indemnity Company, that under paragraph 7 above set out, the plaintiff may not maintain actions against it on the bonds in question. It is the claim of the plaintiff and the amicus curiae that the plaintiff may maintain such actions. The grain involved was stored by the Commodity Credit Corporation. It is a corporation created by Congress. It is an agency of the United States. Rainwater v. United States, 1958, 356 U.S. 590, 78 S.Ct. 946, 2 L.Ed. 2d 996. The statutes relating to it appear in Section 714 et seq., Title 15 U.S. C.A. This Court does not regard it as being of substantive significance that the actions were brought in the name of the United States instead of in the name of the corporation. If brought in the name of the latter, they would be actions sought to be maintained by an "agency" of the United States.

It would seem desirable to consider the legislative background of what is now Chapter 543 and particularly paragraph 7 of Section 543.1 above set out. In the Iowa Constitution the State Legislature is designated as the General Assembly. In 1921 the Thirty-Ninth General Assembly of Iowa enacted Chapter 119 of the Acts of that Assembly providing for bonded warehouses for the storage of agricultural and other commodities. Chapter 119 contained provisions relat-

ing to the matter of the furnishing of a warehouseman's bond and the terms thereof which were substantially similar to those now contained in Chapter 543, Code of Iowa 1958, I.C.A. Section 6 of Chapter 119 provided that any person injured by the breach of any obligation for which a bond was given was entitled to sue on the bond. Section 1 of Chapter 119 provided, in part, as follows:

"SECTION 1. Terms defined. * * As used in this act, 'person' includes a corporation or partnership of two or more persons having a joint or common interest * * * "

It is to be noted that the above paragraph did not contain the following words now found in the corresponding definition in Section 543.1, Code of Iowa 1958, I.C.A., "but shall not mean the United States or Iowa state government or any subdivision or agency of either."

In 1935 the Forty-Sixth General Assembly of Iowa repealed in its entirety what had been enacted as Chapter 119 of the Thirty-Ninth General Assembly and enacted Chapter 104 of the Acts of that Assembly providing for bonded warehouses for agricultural products. The provisions of Chapter 104 as to the matter of the furnishing of a warehouseman's bond and the terms thereof are similar to those now contained in Chapter 543, Code of Iowa 1958, I.C.A. In Chapter 104 the following appears:

"SEC. 2. Terms defined. As used in this act:

* * * * * *

"6. "Person" means an individual, corporation, partnership, or two or more persons having a joint or common interest.' "

It is to be noted that the above paragraph did not contain the following words now found in the corresponding definition in Section 543.1, Code of Iowa 1958, I.C.A., "but shall not mean the United States or Iowa state government or any subdivision or agency of either."

In 1943 the Fiftieth General Assembly repealed in its entirety what had been enacted as Chapter 104 of the Acts of the Forty-Sixth General Assembly. It then enacted Chapter 246 of the Acts of the Fiftieth General Assembly. In paragraph 7 of Section 2 of the Act relating to definitions, the following appears:

"7. 'Person' shall mean an individual, corporation, partnership, or two or more persons having a joint or common interest in the same venture, *but shall not mean the United States or Iowa state government or any subdivision or agency of either.*" (Emphasis supplied.)

The emphasized words were added to what had been the definition of "person" in Chapter 119 of the Acts of the Thirty-Ninth General Assembly and Chapter 104 of the Acts of the Forty-Sixth General Assembly. Paragraph 7 of Section 2 of Chapter 246 of the Acts of the Fiftieth General Assembly, above set out, appears as paragraph 7 of Section 543.1 of Chapter 543, Code of Iowa 1958, I.C.A.

While many of the provisions contained in Chapter 246 of the Acts of the Fiftieth General Assembly (1943) are similar to those contained in Chapter 104 of the Acts of the Forty-Sixth General Assembly (1935) which it repealed, there were a number of substantial differences. The later enactment contained a new provision (Section 18) which is entitled "Acceptance of bulk grain in a warehouse for purposes other than storage." That Section is quite lengthy. It provided, among other things, that grain accepted for purposes other than storage which was held for more than ten days would be regarded as grain held for storage. It contained the following proviso:

" * * * Provided, however, that in each instance of a deposit of grain by the United States Government or any subdivision or agency thereof, a period of thirty days shall be permitted in each instance where a period of ten days is above specified, and action which is specified above to be taken on the tenth day, shall be taken on the twenty-ninth day."

That Section was amended as to some details by Chapter 251 of the Acts of the

Fifty-Seventh General Assembly (1957). It now appears as Section 543.17, Code of Iowa 1958, I.C.A.

It is to be noted that in the last sentence of Section 18 of Chapter 246 of the Acts of the Fiftieth General Assembly just above set out, the words "United States Government or any subdivision or agency thereof" appear and that those words appear in that same form in the definition of the word "person" in paragraph 7 of Section 2 of that Act. Chapter 119 of the Acts of the Thirty-Ninth General Assembly (1921) contained no provision as to charges for storage and delivery. Chapter 104 of the Acts of the Forty-Sixth General Assembly (1935) contained a provision (Section 19) providing for certain minimum storage and delivery charges and for the raising of those charges by the Commission. Chapter 246 of the Acts of the Fiftieth General Assembly (1943) contained a provision (Section 29) providing that the Commission could prescribe minimum storage and delivery charges. That Section further provided for the filing by a warehouseman of his tariff of charges with the Commission and the posting of those charges in his place of business. Following the portion of that Section relating to minimum charges, there appears the following:

"The storage charges herein provided for shall commence on the date of issuance of the warehouse receipt. Provided, however, that a storage or delivery charge other than that specified above may be made, if such charge is required by the terms of a written contract with the *United States Government, any of its subdivisions or agencies*, providing copy of such contract is filed with the commission." (Emphasis supplied.)

Chapter 543, Code of Iowa 1958, I.C.A., has been heretofore referred to. The last official Code of Iowa is the Code of 1897. All of the subsequent so-called Codes of Iowa, including the Code of 1958, are compilations. The official statutory law of Iowa consists of the Code of 1897 and the Acts of the subsequent General Assemblies. However, for convenience, Chapter 543, Code of Iowa 1958, I.C.A., will be used for reference purposes, unless otherwise noted. It will be referred to as Chapter 543. Also, for convenience, the defendant, St. Paul Mercury Indemnity Company, will be referred to as the defendant Indemnity Company.

The plaintiff asserts two grounds for the maintenance of actions against the defendant Indemnity Company. Only one of those grounds is here under consideration. The plaintiff, in both complaints, after setting forth the damages sustained by it because of the breach of the obligations of the warehousemen, and after referring to the warehousemen's bonds on which the defendant Indemnity Company was a surety, goes on to state as follows:

"Under the provisions of Section 543.14, Code of Iowa, the plaintiff is authorized to sue on such bonds in its own name in any Court of competent jurisdiction for the purpose of recovering damages sustained as the result of the principal's breach of any of the aforesaid obligations."

Section 543.14 therein referred to is Section 543.14 of Chapter 543, Code of Iowa 1958, I.C.A., heretofore set out. It provides that any "person" injured by breach of the obligation of a warehouseman may sue on the warehouseman's bond. In paragraph 7 of Section 543.1 of the same Chapter, heretofore set out, it is stated what the word "person" as used in that Chapter includes and excludes. Thus, there is an apparent direct statutory path from the first statutory provision noted to the second statutory provision. In substance, it is the contention of the defendant Indemnity Company that when the plaintiff comes along the statutory path to the second statutory provision it is met with a semantic stone wall; that semantic stone wall being the statement that the word "person" as used in that Chapter excludes "the United States or Iowa state government or any subdivision or agency of either."

It is the claim of the plaintiff and the amicus curiae that the General Assembly did not intend to exclude the plaintiff or its agencies from maintaining an action on a warehouseman's bond furnished under Chapter 543. It is the further claim of the plaintiff that if the General Assembly did so intend it could not do so. The plaintiff and the amicus curiae make certain other claims which will be later referred to.

In support of the claim that the General Assembly did not intend to exclude the plaintiff from maintaining an action on a warehouseman's bond furnished under Chapter 543, the plaintiff and the amicus curiae rely upon legislative history and administrative interpretation.

The legislative history is quite meagre. In the Iowa General Assembly the debates are not reported and the committee reports are usually limited to recommendations as to suggested action by the Assembly. See Note, The Inadequacy of Legislative Recording in Iowa, 35 Iowa Law Review 88 (1949). What now appears as Chapter 543, Code of Iowa 1958, I.C.A., had its origin in House File 406 of the Fiftieth General Assembly. House File 406 was drafted by the Committee on Agriculture of the House of Representatives. In the files of the Fiftieth General Assembly the following appears:

"Explanation of H. F. 406

"Chapter 426, 1939 Code is to be amended in substantially each of the sections contained therein. This amendment in no way grants additional power or authority to the commission, and such changes as are contained in this bill now before you are purely clarification and remedial measures. Chapter 426 as now contained in the Code is ambiguous, not clear, is subject to much argument and disagreement as to its application and is further questionable as to the rights, powers and duties of warehousemen, and is generally unsatisfactory.

"The principal change in the bill now before you is the provision dealing with the publication of a tariff as provided in section 9751.28 of the new bill and further noted in 9751.05 application for license. This section would require each warehouseman to publish and place in a conspicuous manner on his premises his tariff so that each person doing business with him would have full knowledge of his rates and charges, and in that manner would prevent possible discrimination between depositors. It does not grant the commission jurisdiction over storage rates. This section is the only section that was passed by the senate in the 49th General Assembly which bill, with the addition of this new section, is the one now in your possession.

"As stated above, the other changes in this bill, in so far as changes in the present law as now contained in chapter 426 are purely remedial and corrective measures which specifically set forth certain duties, rights, liabilities and powers all of which are now contained in the present law as written but more specifically defined and outlined in the present bill.

"This bill in its entirety is for the primary purpose of giving a more clearly defined protection to the farmers and to the purchasing public, and in no way grants additional powers to the commission."

Chapter 426 of the 1939 Code referred to is the same as Chapter 104 of the Acts of the Forty-Sixth General Assembly heretofore referred to.

The Explanation of H. F. 406, heretofore set out, is not particularly helpful. While it is stated in the Explanation that the proposed bill differed mainly from the Chapter being repealed in the matter of remedial and corrective matters, yet as enacted the bill contained a number of substantial additions and other changes. The Explanation seems to stress that the proposed bill would limit the power of the Commission to fix storage rates. The Explanation concludes by stating that its primary purpose was to give more "clear-

ly defined protection to the farmers and to the purchasing public."

■■ The parties in their briefs and arguments speculate as to the considerations which may have motivated the Fiftieth General Assembly to add the exclusionary words relating to the United States, the State of Iowa, and their subdivisions and agencies. The amicus curiae suggests that the reason the General Assembly added the exclusionary words was the fear that the United States or the State government might enter into competition with private bonded warehousemen, and the existing definition of "person" was changed to exclude them from that field. It would seem that the situation does not lend support to that view. If the United States decided to go into the operation of warehouses, an attempt on the part of the Iowa General Assembly to stop them from so doing would be futile. Further, neither the State of Iowa nor its agencies could enter into the operation of warehouses without the consent of the General Assembly and the appropriation of funds therefor. There inheres in the suggestion of the amicus curiae the thought that the definition of the word "person" in paragraph 7 of Section 543.1 of Chapter 543 is only applicable to those sections where the word "person" is used in connection with the matter of going into the warehouse business and is not applicable where the word "person" is used in the other sections. Where a legislative act provides that the definitions are for "this Act" the term refers to the entire Act. See State ex rel. Board of Pharmacy Examiners of State v. McEwen, 1959, 250 Iowa 721, 96 N.W.2d 189, 192. In Chapter 543 the General Assembly provided that "as used in this chapter" certain words should have certain meanings. The Iowa Supreme Court in the case of Patterson v. Iowa Bonus Board, 1955, 246 Iowa 1087, 71 N.W.2d 1, 6, held that ordinarily it is to be assumed or presumed that words used in one place in a legislative enactment have the same meaning in every other place in the statute. Where a statutory definition of a word is given, that definition must prevail. Fox v. Standard Oil Co., 1935, 294 U.S. 87, 95, 96, 55 S.Ct. 333, 79 L.Ed. 780. In the case of W. J. Sandberg Co. v. Iowa State Board of Assessment and Review, 1938, 225 Iowa 103, 278 N.W. 643, at page 645, 281 N.W. 197, in construing an Act of the Iowa General Assembly containing definitions, the Iowa Supreme Court stated:

"* * * In construing this statute, we are bound by the definition of terms made use of by the Legislature. As stated by this court in the case State v. City of Des Moines, 221 Iowa 642, 266 N.W. 41, 42, 'the Legislature is its own lexicographer.' * * * "

In the recent case of Cowman v. Hansen, 1958, 250 Iowa 358, 92 N.W.2d 682, at page 685, the Court stated as follows in regard to the Iowa Legislature:

"* * * It is its own lexicographer, and common-law and dictionary definitions must yield when the legislature, by express enactment, defines its own terms. * * * "

In the recent case of Cook v. Bornholdt, 1959, 250 Iowa 696, 95 N.W.2d 749, 751, the Iowa Supreme Court held that where the General Assembly defined words as used in the enactment that such definitions were mandatory both as to inclusion and exclusion.

It was suggested by the defendant Indemnity Company that in adding the exclusionary words here under consideration, the Fiftieth General Assembly was motivated by the fact that it would only be in the event of insolvency of a warehouseman that the matter of the warehouseman's bond would be of importance and that in that event the United States would have priority for its claim under the provisions of Section 191, Title 31 U. S.C.A., and that, therefore, warehousemen's bonds should be for the exclusive benefit of farmers and other private parties who deposit grain in bonded warehouses. In the last sentence of the Explanation of H. F. 106, heretofore referred to, it is stated that the bill's pri-

mary purpose was that of "giving a more clearly defined protection to the farmers." In Section 543.28 of Chapter 543 relating to minimum rates, it was provided, in substance, that the United States could make its own arrangements with a warehouseman as to rates. There would seem to inhere in the suggestion of the defendant Indemnity Company that where the United States was depositing grain with a warehouseman and did not feel secure under the priority afforded it by Section 191, Title 31 U.S.C.A., it should make its own arrangement with such warehouseman as to bond or other security.

■ The Court is of the view that the record is blank as to what motivated the Fiftieth General Assembly to add the exclusionary words in question. The courts are not at liberty to speculate upon the considerations which motivate a legislative body. General Mills v. Division of Employment and Security, 1947, 224 Minn. 306, 28 N.W.2d 847, 850. That is especially true where, as in cases like the present, the record is blank as to such considerations.

The recent case of Ashby v. School Township, 1959, 250 Iowa 1201, 98 N.W. 2d 848, had to do with a statute enacted by the Iowa General Assembly. The Iowa Supreme Court stated (at page 857 of 98 N.W.2d):

"Concerning plaintiff's argument as to the purpose of the legislature in enacting section 279.13 we may say the intent of the legislature which is controlling is to be gathered from the statute itself. It is our duty to give it the interpretation its language calls for and not to speculate as to probable legislative intent apart from the wording used. * *"

The case of Cook v. Bornholdt, 1959, 250 Iowa 696, 95 N.W.2d 749, had to do with a definition contained in an enactment of the Iowa General Assembly. The Iowa Supreme Court stated (at page 751 of 95 N.W.2d):

"To sustain plaintiff's argument would be to hold the legislature did not mean to say what the language it used plainly means. It is pertinent to repeat here the much quoted admonition of the late Justice Oliver Wendell Holmes, 'We do not inquire what the legislature meant. We ask only what the statute means.' * * *"

In Section 543.14 of Chapter 543, it is stated that a "person" may bring an action on the warehouseman's bond furnished under the provisions of that Chapter. In paragraph 7 of Section 543.1 of the same Chapter, the General Assembly states who is to be regarded as a "person" within the provisions of that Chapter. In that paragraph it clearly and definitely excludes the United States, its subdivisions or agencies. To sustain the conclusions of the plaintiff and amicus curiae in this connection would be to say that "the legislature did not mean to say what the language it used plainly means." See Cook v. Bornholdt, supra.

The plaintiff and the amicus curiae rely upon administrative interpretation. It is their claim that it has been the interpretation of the Iowa State Commerce Commission that the United States could maintain an action on a warehouseman's bond required to be furnished under the provisions of Chapter 543 and its statutory predecessors. It also calls attention to an opinion of the Attorney General of Iowa rendered in 1928 in which he gave it as his opinion that the holder of a warehouse receipt furnished by a bonded warehouse could maintain an action on such bond for damages sustained by him because of a breach of obligation on the part of the warehouseman. The opinion did not refer to the matter of the United States maintaining such an action. That opinion was clearly correct under the then Bonded Warehouse Act. However, as heretofore noted, the existing Act was enacted in 1943 and it contains the exclusionary words not contained in its statutory predecessors.

■ It is well settled that where the words of a statute are ambiguous the interpretation placed upon it by an administrative agency entrusted with responsi-

bility in a particular field is entitled to great weight. See cases cited in Interstate Commerce Commission v. Allen E. Kroblin, Inc., D.C.N.D.Iowa 1953, 113 F. Supp. 599, 623. However, it is also well settled that the rule relating to administrative interpretation has no application unless the statute is ambiguous. City of Mason City v. Zerble, 1958, 250 Iowa 102, 93 N.W.2d 94, 98; Michigan-Wisconsin Pipe Line Co. v. Johnson, 1955, 247 Iowa 583, 73 N.W.2d 820, 826. See also Lever Brothers Co. v. Erbe, 1958, 249 Iowa 454, 87 N.W.2d 469, 479. In the case of Ex parte Collett, 1949, 337 U. S. 55, at page 61, 69 S.Ct. 944, at page 947, 93 L.Ed. 1207, the Court stated: " * * * there is no need to refer to the legislative history where the statutory language is clear."

■ In the present cases the exclusionary words are not ambiguous. Where the language of an enactment is not ambiguous, there is no room for construction by the courts. Swarts v. Siegel, 8 Cir., 1902, 117 F. 13, 18, 19; Trustees of Iowa College v. Baillie, 1945, 236 Iowa 235, 17 N.W.2d 143, 153, 154; Eysink v. Board of Supervisors of Jasper County, 1941, 229 Iowa 1240, 296 N.W. 376, 378.

Consideration will next be given to some other questions argued by the parties. It is the claim of the plaintiff and the amicus curiae that the plaintiff may maintain these actions under Rule 3 of the Iowa Rules of Civil Procedure, 58 I.C.A. That Rule is as follows:

"When a bond or other instrument given to the state, county, school or other municipal corporation, or to any officer or person, is intended for the security of the public generally, or of particular individuals, action may be brought thereon, in the name of any person intended to be thus secured, who has sustained an injury in consequence of a breach thereof, *except when otherwise provided.*" (Emphasis supplied.)

■ The Iowa Rules of Civil Procedure have the force and effect of statute.

Amana Society v. Selzer, 1959, 250 Iowa 380, 94 N.W.2d 337, 341; Glatstein v. Grund, 1952, 243 Iowa 541, 51 N.W.2d 162, 174, 36 A.L.R.2d 531; Hubbard v. Marsh, 1948, 239 Iowa. 472, 32 N.W.2d 67, 68. The statutory antecedents of Rule 3 go back to 1851. Rule 3 permits an action on bonds such as those in question "unless otherwise provided." So far as the present cases are concerned, it is "otherwise provided" by the General Assembly in Chapter 543 as to the United States or its subdivisions or agencies.

■ In Chapter 543 the General Assembly enacted specific statutory provisions as to who could maintain an action on the warehouseman's bond furnished under the provisions of that Chapter. Those provisions constitute a special statute in that matter. It is well settled that where there is a special statute dealing with a particular matter that statute will prevail over a general statute dealing with the same subject matter. Shelby County Myrtue Memorial Hospital v. Harrison County, 1957, 249 Iowa 146, 86 N.W.2d 104, 108; Liberty Consolidated School District v. Schindler, 1955, 246 Iowa 1060, 70 N.W.2d 544, 547; Iowa Mut. Tornado Ins. Association v. Fischer, 1954, 245 Iowa 951, 65 N.W.2d 162, 165; State ex rel. Weede v. Iowa Southern Utilities Co., 1942, 231 Iowa 784, 2 N.W.2d 372, 396, 4 N.W.2d 869. In the case of Schisel v. Marvill, 1924, 198 Iowa 725, 197 N.W. 662, the situation was such that the defendants were sureties on a statutory bond given by a contractor in connection with a highway contract with a county. The plaintiff sustained permanent injuries because of the negligence of the contractor's employees. He brought an action on the statutory bond. The bond was conditioned for the performance of the obligations of the contractor and was also for the use and benefit of those performing work or furnishing material in connection with the carrying out of the contract. There was then in effect Section 3467 Code of Iowa 1897, which is a statutory predecessor of Rule 3 of the Iowa Rules of Civil Procedure heretofore referred to. In

that case the Court stated (at pages 664, 665 of 197 N.W.):

> "Appellant also urges upon our consideration Code, § 3467, which provides as follows:
>
> "'When a bond or other instrument given to the state or county or other municipal or school corporation, or to any officer or person, is intended for the security of the public generally, or of particular individuals, action may be brought thereon in the name of any person intended to be thus secured, who has sustained an injury in consequence of a breach thereof, except when otherwise provided.'
>
> "This section is not available to the plaintiff, unless he can show that he is a 'person intended to be thus secured.' He is not included in any of the enumerations which we have already considered. He is not, therefore, a person 'intended to be secured' by the other statutes which we have considered or by the statutory bond which they provide. The foregoing comprises all the statutory provisions which pertain to the question before us. We find nothing therein which assumes in any way to cover a case of such liability as is presented by plaintiff's petition."

It would seem clear that the question of who may maintain an action on a warehouseman's bond furnished under Chapter 543 is governed by the provisions of that Chapter and not by Rule 3 of the Iowa Rules of Civil Procedure.

In the briefs and arguments there was some discussion as to the status of the plaintiff as a third party beneficiary of the warehouseman's bond. The Iowa Supreme Court has long followed the prevailing rule that a contract between two parties may be enforced by a third person for whose benefit it was made. Iowa Home Mut. Cas. Co. v. Farmers Mut. Hail Ins. Co., 1955, 247 Iowa 183, 73 N.W.2d 22, 24, 25; In re Tow's Disinterment, 1952, 243 Iowa 695, 53 N.W.2d 283, 285. See, also, Hudson, Contracts In Iowa Revisited—Third Party Beneficiaries and Assignments, 6 Drake Law Review 3 (1956).

In the case of Shult v. Doyle, 1925, 200 Iowa 1, 201 N.W. 787, at page 790, referring to the rights of a third party beneficiary in such cases, the Court stated:

> " * * * His rights are purely legal. They do not arise out of any equity. They spring alone from the express agreement of the parties, made in his behalf as a third person. Peters v. Goodrich, 192 Iowa 790, 185 N.W. 903. The cause of action thus created in his favor is a bit of legal grace; it cost him nothing; it simply fell upon him, without effort or knowledge on his part. He is entitled to it, such as it is. He has no ground of appeal to equity either to expand it or to prevent its shrinkage. * * * "

In the present cases the defendant Indemnity Company argues that it executed the bonds in question under and in accordance with the provisions of Chapter 543 and that in so doing it only obligated itself in favor of those who were given the right to maintain actions against it by the provisions of that Chapter; and that since the plaintiff was excluded from that group the plaintiff as a third party is attempting to expand its obligations as surety beyond the obligations assumed by it. It is the view of the Court that in situations which involve a statutory bond, such as in the present cases, and the statute providing for the bond specifies who may and who may not maintain an action on the bond, the third-party beneficiary rule is not pertinent. See Frigidaire Sales Corp. v. Maguire Homes, Inc., D.C.1959, 186 F.Supp. 76[7]. If a party is among those to whom the statute gives the right to maintain an action on the bond, such party does not need the third-party beneficiary rule. If a party is among those whom the statute excludes from so doing, the statute cannot be expanded or rewritten by the courts so as to include him within its terms by means of the third-party beneficiary rule.

It is the claim of the plaintiff that the apparent attempt of the Fiftieth General Assembly to exclude it or its subdivisions or agencies from maintaining an action on a warehouseman's bond provided for under Chapter 543 is ineffective for the reason that its rights may not be impaired or infringed upon by state action.

The Federal Government has not pre-empted or purported to pre-empt the field of grain warehousing. Therefore, the feature of Federal pre-emption which is present in certain fields of the law is not present in this situation. The bonds in question were not furnished under or provided for by any law of the United States. The bonds and the obligations thereunder were created by an enactment of the Iowa General Assembly. It is well settled that enactments of a state legislature which infringe upon rights arising under the laws of the United States are of no avail. A striking example of this appears in the case of Republic Pictures Corp. v. Kappler, 8 Cir., 1945, 151 F.2d 543, 162 A.L.R. 228, where the Iowa General Assembly enacted a statute purporting to limit the time for bringing actions arising under any federal statute to six months. In that case an employer sought to use the statute as a defense to a claim of an employee arising under the Fair Labor Standards Act of 1938. Sections 201 et seq., 29 U.S.C.A. The Circuit Court of Appeals for this Circuit held that the statute was ineffective.

It is also a well-settled rule that state legislation which purports to infringe upon or impair rights which have arisen in the favor of the United States is ineffective. United States v. McCabe Co., 8 Cir., 1958, 261 F.2d 539. The plaintiff asserts that the decision in that case is of determinative significance in these cases. In that case the McCabe Company was a public licensed warehouseman under the law of North Dakota. The Commodity Credit Corporation stored grain owned by it with the McCabe Company under warehouse receipts. That Company converted a substantial amount of the grain so stored to its own use.

The United States then instituted an action against the McCabe Company. Under the North Dakota statutes relating to licensed warehouses it was provided that in the case of insolvency of a licensed warehouseman, the Public Service Commission of North Dakota was to be the trustee for purposes of liquidation. Those statutes further provided that any cause for conversion of grain was to be transferred to that Commission and the holders of warehouse receipts could not maintain separate actions therefor. The United States brought an action against the McCabe Company for the conversion of the grain. The lower court held that under the North Dakota statutes the United States could not maintain the action. On appeal that holding was reversed. The United States Court of Appeals held that the claim of the United States for conversion of grain owned by the Commodity Credit Corporation could not be defeated or limited by state law.

In the present cases there is not involved the same question as was involved in the case of United States v. McCabe, supra. Here there has been no attempt on the part of the General Assembly to infringe and impair the rights of the plaintiff against the warehousemen for conversion of the grain. In the present cases the plaintiff has the full and unrestricted right to proceed against the warehousemen for the conversion of the grain in question. However, in the present actions the plaintiff also seeks to assert claims against the defendant Indemnity Company. That Company, of course, did not convert the grain in question. The plaintiff seeks to maintain an action against the defendant Indemnity Company under the provisions of Chapter 543 relating to warehousemen's bonds and it so states in its complaint. The very Chapter under which it claims the right to maintain the actions excludes it from so doing. The provisions of Chapter 543 relating to warehousemen's bonds are solely of state legislative origin and creation. No rights ever arose in favor of the plaintiff and against the defendant Indemnity Company on its bonds by

federal statute, federal law, or common law. There cannot be any infringement or impairment of rights which never arose. In the present cases, under the plain provisions of Chapter 543, no rights ever arose in favor of the plaintiff or the Commodity Credit Corporation against the defendant Indemnity Company on the bonds in question.

▆ It is well settled that if the United States brings itself within the provisions of state legislation, it is entitled to the rights afforded by such legislation. In the case of Noltze Motor Co. v. Burrows-Moore Pontiac, Inc., D.C.N.D. Iowa 1958, 157 F.Supp. 593, the United States sought and secured the rights of a creditor under the Iowa Bulk Sales Act (Chapter 555, Code of Iowa 1958, I. C.A.). In the case of Mason City & Clear Lake Railroad Co. v. Imperial Seed Co., D.C.N.D.Iowa 1957, 152 F.Supp. 145, the United States sought and secured the rights of an existing creditor within the purview of Section 556.3, Code of Iowa 1958, I.C.A., giving such a creditor priority over unrecorded chattel mortgages. However, those are different situations from the situation in the present cases. In the present cases the United States is attempting to bring itself within the provisions of a state legislative enactment which, by its terms, excludes it.

▆ It is the ruling of the Court that the plaintiff may not maintain an action against the defendant Indemnity Company in these two actions based upon the provisions of Chapter 543, Code of Iowa 1958, I.C.A.

It was heretofore noted that there were two phases as to the claims of the plaintiff against the defendant Indemnity Company. The only phase here under consideration is that in which liability is predicated only upon the provisions of Chapter 543. The other phase is in substance that the defendant Indemnity Company incurred liability to the plaintiff on the bonds in question by virtue of transactions had directly between the Commodity Credit Corporation and that defendant. The liability of the defendant Indemnity Company to the plaintiff on

that phase is to be later determined. There are also other issues between the plaintiff and certain of the other defendants to be determined later.

It is hereby ordered that the ruling herein made shall inhere and be a part of the final judgments rendered in these actions.